## Commonwealth *v.* Harris, Appellant.

Argued March 19, 1958. Before RHODES, P. J., HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ.

*A. L. Higginbotham,* with him *Harvey N. Schmidt,* and *Norris, Schmidt, Green, Harris & Higginbotham,* for appellant.

*Juanita Kidd Stout,* Assistant District Attorney, with her *James N. Lafferty,* First Assistant District Attorney, and *Victor H. Blanc,* District Attorney, for appellee.

OPINION BY HIRT, J., April 16, 1958:

The defendant was convicted on charges of unlawful possession and sale of a narcotic drug, as defined and prohibited by the Act of July 11, 1917, P. L. 758, as amended, 35 PS §851 et seq. He was convicted of felony under the Act on the testimony of the single witness Jackson, a habitual user of the drug heroin. Jackson was a convicted seller of the drug, in Holmesburg Prison since 1955 under sentence for one offense, and awaiting sentence on a second conviction for selling.

Jackson was brought from prison to the defendant's trial on March 20, 1957. He testified that he had known Harris since 1952 and that on their contacts with each other, narcotics was the subject of their conversation; that he made two purchases from the defendant in 1955, and paid him $20 on each occasion for 1/16th of an ounce; that in both instances he negotiated with the defendant for the purchase of the drug heroin; and it was delivered to him by Harris on the last occasion (with which we are here concerned), on October 9, 1955, at a prearranged meeting place in West Philadelphia. Jackson had been a habitual user of heroin since some time in 1953. He used it every day according to his testimony, up to the time of his arrest in 1956. He testified that what he bought from the defendant was in the familiar form of a white powder and that he identified it as heroin through using some of it by "snorting" it or by means of a hypodermic needle. Of course Jackson did not take his purchase to a chemist for analysis, but he testified positively that his reaction from the drug was the familiar relief that he had experienced in his prior habitual use of heroin, which he had acquired from others than the defendant. In referring to his involuntary hankering for the drug and his reaction from its use he in part said: "You feel

you have a nauseated feeling and after you take the drugs then you feel—I mean it is a reaction. It relieves the pain." President Judge OLIVER, before whom the case was tried, in a fair and impartial charge instructed the jury that under our decisions a chemical analysis of the drug was not essential to proof of the offense; that "In such cases, it is not required that the Commonwealth establish that the compound contains at least one-eighth of a grain of heroin per avoirdupois; it is sufficient for the Commonwealth to prove that heroin in any quantity was sold or given by the defendant to a known habitual user of drugs", such as Jackson. And as to the credibility of Jackson and the weight to be given his testimony the jury was instructed: ". . . the witness has been arrested and convicted; he is in prison today; he was sentenced on the 13th of last November to not less than thirteen months nor more than five years in the County Prison, and he is in the County Prison now. There is a rule of law that testimony coming from a convicted person must be scrutinized with great care. It comes from what the law calls a polluted source. But the law also says that you have the right to consider that testimony, and if after scrutinizing it with care you still conclude that witness told you the truth, you may rely upon it . . . So scrutinize his testimony, but if you think he was telling the truth you have the right to rely upon it." The jury was also reminded that in none of the bills was Jackson charged with having used the drug. But the jury was categorically instructed that: "If, under [his] testimony, you are convinced beyond a reasonable doubt that this defendant sold Jackson heroin, it is your duty to convict. If you don't believe that beyond a reasonable doubt, it would be your duty to acquit."

Defendant's motions in arrest of judgment and, in the alternative, for a new trial were refused and the defendant was sentenced. In this appeal he contends that the admission of Jackson's testimony was error in that it violated his right of Federal and State due process. We find no reversible error in this record; the judgment of sentence will be affirmed.

We agree with the lower court that Jackson's testimony was more than mere ordinary opinion evidence. Because of his long experience with narcotics it had much of the quality of expert testimony and was admissible as such. In general an expert is one who, because of knowledge not commonly possessed, is especially qualified to speak upon a particular subject. The rule, of long standing, as to the competency of such witnesses has been thus stated: "The witness may state relevant facts known to him, because of experience, even though he is not regarded as an expert whose opinion would be admissible on a hypothetical inquiry: Com. v. Blankenstein, 81 Pa. Superior Ct. 340. If he has any reasonable pretension to specialized knowledge on the subject under investigation he may testify, and the weight to be given to his evidence is for the jury: Ardesco Oil Co. v. Gilson, 63 Pa. 146; Stocker v. Schneider, 228 Pa. 149. 'The test applied must not set the standard of qualification so high as to exclude [as here] the only available kind of testimony ordinarily obtainable in such cases': White v. R. R. Co., 222 Pa. 534, 537. Whether the knowledge of the witness justifies the admission of his testimony is a matter for preliminary inquiry by the trial court, being largely a question within its discretion, and the affirmative determination as to competency will not be interfered with by this court except in cases of clear error: Allegro v. Rural Valley Mut. F. Ins. Co., 268 Pa. 333; Ryder v. Jacobs, 182 Pa. 624; Stevenson v. Ebervale

Coal Co., 203 Pa. 316": *McCullough v. Holland Furnace Co.,* 293 Pa. 45, 141 A. 631.

The question is not new to this Court. In *Commonwealth v. Aikens,* 179 Pa. Superior Ct. 501, 118 A. 2d 205, we affirmed convictions on indictments charging selling and trafficking in narcotic drugs in which the Commonwealth's case depended upon the uncorroborated testimony of a drug addict. The witness there was held to be qualified to testify that the substance sold to her by the defendant was heroin; and that a chemical analysis was not essential to proof of that fact. So also in *Commonwealth v. Davis,* 183 Pa. Superior Ct. 347, 132 A. 2d 408 (allocatur refused August 26, 1957) the witness for the Commonwealth, whose testimony was essential to a conviction, was a self-confessed drug addict. In affirming the judgment of sentence we held, as in the *Aikens* case, that the credibility of the witness and the weight of his testimony were questions of fact for the jury under the proper and adequate instructions of the trial judge, and that the uncorroborated testimony of the witness was sufficient to support the conviction.

In the *Aikens* case the witness had been convicted as a user of heroin; in the *Davis* case the addict-witness had not been convicted of that particular offense. He had been placed on probation following his conviction on a charge of *sale* of narcotics, and was in the workhouse as a parole violator at the time of the trial of Davis. Clearly, whether the self-confessed user of heroin had previously been convicted as such in a criminal court had no controlling effect on the question of his competency as a witness in the present case. He was a competent witness and the weight to be given his testimony of course was for the jury. *Com. of Pa. v. Retacco & Retacco,* 82 Pa. Superior Ct. 79.

While there is no evidence that Harris had ever been convicted of the use of narcotics, although arrested on that charge in 1955, there were pleas of guilty on numerous charges of sale and possession of the drugs in 1955 and 1956. His long and varied experience in dealing with narcotics undoubtedly had its effect with the jury in lending credence to his testimony.

Judgment of sentence affirmed.