Fumea Liquor License Case.

Argued April 21, 1958. Before HIRT, GUNTHER, WRIGHT, WOODSIDE, ERVIN, and WATKINS, JJ. (RHODES, P. J., absent).

*Donald M. Miller*, for appellants.

*George G. Lindsay*, Assistant Attorney General, with him *Horace H. Segelbaum*, Assistant Attorney General, and *Thomas D. McBride*, Attorney General, for appellee.

OPINION BY WRIGHT, J., June 11, 1958:

On May 1, 1956 the Pennsylvania Liquor Control Board granted to Harry J. Fumea and Mary E. Fumea a restaurant liquor license for premises known as Fumea's Tavern situated in Burrell Township, Indiana County. On May 24, 1957 the Board issued a citation to said licensees to show cause why their license should not be revoked and the license bond forfeited by reason of certain alleged violations. After hearing, the Board made an order revoking the license effective as of October 15, 1957. The Fumeas appealed to the Court of Quarter Sessions of Indiana County, which tribunal, after hearing de novo, affirmed the order of the Board. This appeal to the Superior Court followed. The fac-

tual situation is set forth in the following excerpt from the opinion of President Judge CLARK:

"For some time prior to March 23, 1957, reports had circulated that teenagers were purchasing intoxicating liquors. On March 23, 1957, there was held at the Armory in Indiana what is known as a 'Record Hop'. The Indiana Borough Police and an investigator for the Liquor Control Board attended the 'Record Hop', and found that a number of the teenagers had in their possession quantities of beer. As a result about thirty-five teenagers were questioned, and statements were taken from them concerning the places at which they had purchased beer at various times during the past few months. One of the places that was reported to the investigating officers was the premises known as 'Fumea's Tavern' where the licensees were Harry J. Fumea and Mary E. Fumea . . .

"At the hearing there were in attendance approximately thirty teenagers who were subpoenaed by the Commonwealth. About half of these testified that on various occasions they had either purchased beer from Harry J. Fumea or a waitress at his place, or that they were present when other teenagers had purchased beer. The mode of operation generally was as follows: The teenagers on either Friday or Saturday night would drive down to the Fumea Tavern and would knock at the back door and make known their wants, and then Harry J. Fumea or his waitress would supply them with whatever beer they ordered. On a few occasions some of the teenagers went into the premises and purchased beer inside, and drank the beer inside. The purchases on the inside were infrequent. The sales from the back door were practically every Friday and Saturday night during the month of December, 1956, January, February and March of 1957. There was no evidence that at any time Mary E. Fumea made any of

the sales. No one testified to purchasing any liquor, all the purchases were of beer. Most of the teenagers who would do the purchasing were of the age sixteen or seventeen years. There can be no doubt but what Mr. Fumea knew that these people were minors, and that the sales were intentional, deliberate, and that the violation of the law was flagrant. A number of the teenagers testified they were advised by Mr. Fumea to be careful, because he thought maybe they were being watched. At the hearing Mr. Fumea himself went on the stand and denied that he had sold any beer to teenagers. In the opinion of this Court Mr. Fumea not only violated the law in making the sales, but by his going on the stand and testifying as he did he showed his utter disregard for telling the truth".

Appellants first contend that the lower court erred in permitting the Board "to offer evidence of sales of beer where there had been no analysis and where the only testimony as to the nature of the beverage was from minors". The record discloses that the witnesses requested beer by brand names, received sealed bottles bearing labels printed with the brand names requested, consumed the contents, and identified the same as beer. The compelling inference is that the bottles in question actually contained beer. A chemical analysis was not required. See *Commonwealth v. Nunamaker*, 84 Pa. Superior Ct. 97; *Commonwealth v. Harris*, 186 Pa. Superior Ct. 59, 140 A. 2d 344. A similar contention was effectively answered by Judge ERVIN in *Summit Hill Rod and Gun Club Liquor License Case*, 184 Pa. Superior Ct. 584, 135 A. 2d 781.

Appellants next contend that the lower court abused its discretion in sustaining the order of the board. Section 471 of the Liquor Code[1] provides inter alia (italics

---

[1] Act of April 12, 1951, P. L. 90, 47 P.S. 4-471.

supplied): "Upon appeal, the court so appealed to shall, *in the exercise of its discretion,* sustain, reject, alter, or modify the findings, conclusions and penalties of the board, based on the findings of fact and conclusions of law as found by the court". If there is a conflict in the evidence, the court may make different findings of fact than those of the Board. In such event, it may sustain or reverse the Board, and impose a less or more severe penalty: *Andracchio Liquor License Case,* 160 Pa. Superior Ct. 74, 49 A. 2d 843. Our function is to determine whether there is evidence to support the order appealed from, and whether the court below committed an error of law or abused its discretion: *Heights Fire Company Liquor License Case,* 181 Pa. Superior Ct. 56, 121 A. 2d 902.

Appellants contrast the Board's findings that the licensees permitted minors to frequent the premises, and sold "liquor and/or" malt beverage to minors, with the court's more favorable findings that the wife licensee made no sales to minors, that Fumea's Tavern was not frequented by minors, and that the sales were of malt beverages only. They argue that, notwithstanding the conclusion of the court below, the violation was not flagrant, that there had been no prior citations, that they bear excellent reputations, and that the Board "has either abandoned or departed from its former policy of revoking licenses for sales to minors". Their position is that there should have been only a suspension and not a revocation. On the contrary, we perceive no abuse of discretion in the action of the court below. As President Judge KELLER pointed out in *Pacewicz Liquor License Case,* 152 Pa. Superior Ct. 123, 31 A. 2d 361, the sale of intoxicants to minors is a serious violation, and the most effective means of stopping it is a revocation of the license. While the altered findings of fact empowered the court below to

reduce the penalty, they certainly did not require such reduction. There is no question that, if the circumstances warrant, a license may be revoked on a first violation: *Ajax Club Liquor License Case*, 153 Pa. Superior Ct. 473, 34 A. 2d 326; *Turner v. Pennsylvania Liquor Control Board*, 161 Pa. Superior Ct. 16, 53 A. 2d 849; *Reiter Liquor License Case*, 173 Pa. Superior Ct. 552, 98 A. 2d 465.

Appellants argue finally that, since the wife licensee was not directly involved in the violations, the order of revocation "is unduly harsh". However, as pointed out by the court below, "there is a responsibility upon Mrs. Mary E. Fumea as a joint licensee to be on the job to see that the law is not violated". This is in accord with the well-established rule that a licensee is responsible for the acts of his agents and employees, and may not prevent the revocation of the license by endeavoring to place the blame for violations upon them. See *In re Janiro's Liquor License*, 163 Pa. Superior Ct. 398, 62 A. 2d 102; *In re Southern Outing Club of Pittsburgh*, 166 Pa. Superior Ct. 555, 72 A. 2d 600. While there are apparently no appellate decisions on this point, it has been held in lower court cases that a liquor license owned by a husband and wife jointly may properly be revoked upon proof that the husband only was guilty of a violation: *Kisslinger's Appeal*, 59 D. & C. 126; *Panichi's License*, 41 D. & C. 256.

To summarize, we find that there is evidence to support the order appealed from, and that there has been no error of law or abuse of discretion. Our review of the record discloses ample justification for the conclusion of the lower court that the sales were deliberate and intentional, and "that Harry J. Fumea by his conduct has indicated that he is not a fit person to have a liquor license".

**Order affirmed.**