Vernon Percy **HOWARD**, Appellant,

v.

**STATE** of Alaska, Appellee.

No. 1353.

Supreme Court of Alaska.

April 28, 1972.

**658**

Herbert D. Soll, Public Defender, Michael L. Rubinstein, Asst. Public Defender, Anchorage, for appellant.

John E. Havelock, Atty. Gen., Juneau, Seaborn J. Buckalew, Dist. Atty., Charles M. Merriner, Asst. Dist. Atty., Anchorage, for appellee.

Before BONEY, C. J., and RABINOWITZ, CONNOR and ERWIN, JJ.

## OPINION

RABINOWITZ, Justice.

Vernon Percy Howard was tried and convicted under an indictment which charged him with selling heroin on February 2, 1970, to John Allen Brown in violation of AS 17.10.010.

Brown was the principal prosecution witness. He testified that on February 2, 1970, he asked Howard for heroin, that Howard said he did not have any with him but might be able to obtain some, and that Howard told him to go to Howard's apartment. Brown further testified that he and his financee, Carmelia Link, went to Howard's apartment on February 2, 1970, to obtain heroin. There they were admitted by Carol Jackson, a woman who was living on the premises. Howard arrived a short time later. After his arrival, Howard began capping a substance into small gelatin capsules. Brown testified that to the best of his knowledge he thought the substance was heroin. Brown stated he was offered some of the substance by Howard, that he took it, and then asked Howard if he could use the bathroom. According to Brown, he then went to the bathroom, took the substance, cooked it up on a spoon, filtered it through a cigarette filter, and then with an insulin syringe injected the substance into his veins. After he had injected the substance, Brown said he experienced relief from the symptoms of his craving for an opiate. Carmelia Link's testimony on the events of the day paralleled that given by Brown. Link also testified that she had previously observed fixes and that after Brown had injected the substance, he became drowsy, slurred his words, and was no longer nervous.

Regarding the nature of the substance which Brown stated he injected into his veins, Brown testified that he had used heroin since November 1968 and that he had purchased heroin in Anchorage and Seattle. Brown said that he had acquired

heroin from Howard in the past, having first obtained heroin from Howard the previous summer. Brown claimed that he was addicted at the time and that he had experienced well over 100 injections of heroin. As to the occasion in question, Brown related that he had experienced the symptoms of craving for an opiate before, and that the injection of the substance that Howard had given him relieved these symptoms. On cross-examination, Brown admitted he was not positive as to the nature of the substance he received from Howard. On redirect, Brown reiterated his testimony that injection of the substance did in fact relieve his craving for an opiate and that the 10 buys of heroin he had made in Seattle had produced the same effect. Over objection, Brown testified that prior to February 2, 1970, he had made over 100 buys of heroin from Howard.[1] He further stated that he received relief from his craving for opiates when he injected the substances which he had purchased from Howard on these previous occasions.

Dr. J. Ray Langdon testified that he had treated Brown the previous fall for addiction to a narcotic drug. In the witness's opinion, an addict who injected himself with a substance and received relief from withdrawal distress, or the craving of an opiate, would know that the substance he injected was an opiate based drug, but that opiates other than heroin would give similar relief. Dr. Charles D. King, a medical technologist, gave testimony that he had examined urine specimens taken from Brown during the period he was under treatment by Dr. Langdon. According to Dr. King, he detected opiates during two of approximately eight tests.

Howard offered two witnesses in his defense. Stephen Elben testified that he had given Brown a capsule of heroin on the afternoon of February 2, 1970. Carol Jackson testified that at about 6 or 7 p. m., on February 2, 1970, Brown and Link had come to the apartment where she and Howard were living. Jackson stated that Howard never gave Brown any capsules, and that no capsules were present in the apartment. The witness further said that she observed Brown and Link in Howard's bathroom and saw Brown doing something to Link's arm with a needle. Jackson said that this scared her and that she then requested Howard to ask Brown and Link to leave the apartment.

A jury found Howard guilty; he has appealed his conviction. In this appeal several grounds are asserted as a basis for reversal.[2]

█ In this appeal we must determine whether the fact that Brown was an admitted heroin addict requires that his testimony be corroborated. Howard baldly asserts "[t]hat many opiate addicts are habitual prevaricators as well as cynical opportunists is well-known to those who come into contact with them . . . ." In *Fields v. State*, 487 P.2d 831 (Alaska 1971), an opinion which was published after the supplemental briefs had been filed in this case, we rejected a contention similar to the one advanced by Howard in the case at bar. *Fields* dealt with the question of impeachment of a witness by introduction of evidence of the witness' addiction to heroin. There we said:

There may, in fact, be justification for introducing evidence of heroin use and addiction to impeach a witness where the evidence pertains either to the time

---

1. Brown gave testimony that he had dealt with Howard in the past and at those times heroin, smack and other slang terms were used in their conversations regarding heroin. Bown was then asked how many times he had dealt with Howard, with regard to what he, Brown, believed to be heroin. Brown's estimate, in reply, was over 100 times. Brown also related that

Howard never suggested to him that the substance he was selling was not heroin.

2. Originally Howard's sole specification of error related to the trial court's admission into evidence of Brown's testimony that he had made over 100 previous buys of heroin from Howard. Subsequent to oral argument, we requested supplemental briefing on several additional questions.

of the occurrences which the witness has observed or to the time of trial. In such instances, use of heroin could potentially affect the capacity of the witness to accurately observe or relate details of the events which he has seen. But we cannot accept a rule under which persons who use or are addicted to heroin are considered necessarily and inherently unreliable as witnesses. The rule thus stated is based upon a 'common knowledge' which is scientifically unsound and which has been rejected by the more penetrating judicial opinions on the subject. . . .

We therefore hold that evidence of narcotics use or addiction will not be admissible where its only purpose would be to impeach a witness by showing that he is, by sole virtue of his addiction, inherently unreliable.[3]

Since *Fields* rejects Howard's basic premise regarding the testimonial unreliability of addicts, we believe that *Fields* is dispositive of the issue here for we cannot perceive any significant distinction between application of the asserted premise to impeachment as opposed to corroboration problems. In light of *Fields*, we think it would be inconsistent now to enunciate a rule requiring that an addict's testimony be corroborated. Our holding that an addict's testimony need not be corroborated is in accord with the thinking of other courts. Commonwealth v. Harris, 186 Pa. Super. 59, 140 A.2d 344 (1958); Commonwealth v. Aikens, 179 Pa.Super. 501, 118 A.2d 205 (1955); Tobar v. State, 32 Wis.2d 398, 145 N.W.2d 782 (1966), cert. denied, 390 U.S. 960, 88 S.Ct. 1059, 19 L.Ed.2d 1157 (1968); *cf.* United States v. Griffin, 382 F.2d 823 (6th Cir. 1967); People v. Romero, 54 Ill.App.2d 184, 203 N.E.2d 635 (1964).

We thus conclude that the testimony of an admitted addict need not be corroborated.

 Howard also contends that Brown's testimony was required to be corroborated because Brown was an accomplice to the sale.[4] Prior decisions of this court established the rule that one is not an accomplice unless he could be charged with the same crime for which the defendant is prosecuted. *See* Taylor v. State, 391 P.2d 950 (Alaska 1964); Daniels v. State, 383 P.2d 323 (Alaska 1963), cert. denied, 375 U.S. 979, 84 S.Ct. 502, 11 L.Ed.2d 424 (1964); Mahle v. State, 371 P.2d 21 (Alaska 1962). A purchaser of illegally sold narcotics cannot, then, be an accomplice to the sale. Here we do not have a situation where Brown acted as Howard's agent in the sale of an illegal narcotic. McKay v. State, 489 P.2d 145, 151–152 (Alaska 1971). We therefore hold that his testimony need not be corroborated.[5]

 We next turn to the question of whether Howard's conviction can be sustained absent physical corroboration that the substance sold to Brown was in fact heroin. Howard recognizes in his brief that the weight of authority is against him and that the *corpus delicti* may be established by circumstantial evidence. *E. g.,* United States v. Nuccio, 373 F.2d 168 (2d Cir.), cert. denied, 387 U.S. 906, 87 S.Ct. 1688, 18 L.Ed.2d 623 (1967). Howard urges that an exception be carved out for those situations where there is "substantial doubt or conflicting evidence" and that in such circumstances the use of circumstantial evidence alone to establish the *corpus delicti* is inappropriate. We decline to adopt Howard's suggested exception for to do so would be tantamount to abrogation of the rule that the *corpus delicti* of a drug offense may be established by circumstantial

---

3. 487 P.2d 831, 844–845 (Alaska 1971) (citations omitted) (footnotes omitted).

4. AS 12.45.020 provides:

 A conviction shall not be had on the testimony of an accomplice unless it is corroborated by other evidence which tends to connect the defendant with the commission of the crime; and the corroboration is not sufficient if it merely shows the commission of the crime or the circumstances of the commission.

5. II F. Wharton, Criminal Evidence § 456, at 240 (12th ed. 1955).

evidence. There is substantial authority that the narcotic quality of a substance may be shown by the testimony of an addict who used it. United States v. Nichols, 322 F.2d 681, 684 (7th Cir. 1963), cert. denied, 375 U.S. 967, 84 S.Ct. 485, 11 L.Ed. 2d 415 (1964); United States v. Agueci, 310 F.2d 817, 828 (2d Cir. 1962), cert. denied, 372 U.S. 959, 83 S.Ct. 1016, 10 L.Ed. 2d 12 (1963); People v. Robinson, 14 Ill.2d 325, 153 N.E.2d 65 (1958); Commonwealth v. Harris, 186 Pa.Super. 59, 140 A.2d 344 (1958); cf. People v. Galfund, 267 Cal.App. 2d 317, 72 Cal.Rptr. 917 (1968). We therefore hold that it was not necessary that the state adduce physical corroboration that the substance sold to Brown was in fact heroin.

■ Our treatment and resolution of these first three issues leads us to the broader question of whether the state's evidence was sufficient to establish that Howard sold heroin to Brown in violation of AS 17.10.010. Our review of the record shows that the prosecution's evidence was sufficient to warrant conviction.

In Beavers v. State, 492 P.2d 88, 97 (Alaska 1971), we said:

> On appeal from denial of a motion for acquittal, this court "must view the evidence and the inferences to be drawn therefrom in a light most favorable to the state." (citation omitted)

Employing this test in our review of the record in this case, we believe "that fair minded men in the exercise of reasonable judgment could differ on the question of whether guilt has been established beyond a reasonable doubt,"[6] and that therefore the issue of Howard's guilt was properly submitted to the jury. We believe that the state's evidence, as detailed above, was sufficient to support Howard's conviction.[7]

■ This brings us to consideration of the final specification of error in this appeal. Howard contends that the trial court committed reversible error in permitting the prosecution to elicit testimony from Brown that he had made over 100 buys of a substance he believed to be heroin from Howard previous to the transaction which took place at Howard's apartment on February 2, 1970. Our decision in Watson v. State, 387 P.2d 289, 293 (Alaska 1963), governs the disposition of this issue. In *Watson,* we said:

> Evidence that reveals the commission of an offense other than that for which the defendant is being tried is inadmissible if it is relevant merely to show criminal disposition. But such evidence is admissible, even when it shows the defendant's prior trouble with the law, when it is relevant to prove some other material fact. (footnote omitted)[8]

If the evidence is relevant under the *Watson* test, then it is necessary to determine if the probative value of such evidence outweighs its prejudicial effect.[9]

6. Bush v. State, 397 P.2d 616, 618 (Alaska 1964).

7. As to the question of sufficiency of the evidence, in Beck v. State, 408 P.2d 996, 997 (Alaska 1965), we said:
The question . . . is whether the finding of guilt is supported by substantial evidence, that is, such relevant evidence which is adequate to support a conclusion by a reasonable mind that there was no reasonable doubt as to appellant's guilt. (footnotes omitted)

8. *Watson* has been followed in several later decisions. McKee v. State, 488 P.2d 1039 (Alaska 1971); Thessen v. State, 454 P. 2d 341, 353 (Alaska 1969), cert. denied, 396 U.S. 1029, 90 S.Ct. 588, 24 L.Ed.

2d 525 (1970); Nicholi v. State, 451 P.2d 351, 357–359 (Alaska 1969) (Rabinowitz, J., dissenting); Gafford v. State, 440 P.2d 405, 407–408 (Alaska 1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 125 (1969); Kugzruk v. State, 436 P.2d 962, 966–968 (Alaska 1968). *See* C. McCormick, Handbook of the Law of Evidence § 157 (1954); Model Code of Evidence rule 311 (1942); Uniform Rules of Evidence rule 55 (1965).

9. Nicholi v. State, 451 P.2d 351, 359 (Alaska 1968) (Rabinowitz, J., dissenting); Gafford v. State, 440 P.2d 405, 408 (Alaska 1968), cert. denied, 393 U.S. 1120, 89 S.Ct. 996, 22 L.Ed.2d 125 (1969); Kugzruk v. State, 436 P.2d 962,

In the factual context of the case at bar, we think that Brown's testimony that he made over 100 buys of a substance which he believed to be heroin from Howard on occasions prior to February 2, 1970, was clearly relevant. As the evidence outlined at the outset shows, the prosecution was attempting to prove circumstantially that the drug that Brown said was transferred to him by Howard on February 2, 1970, was heroin. When the evidence of previous buys from Howard is considered, together with Brown's testimony as to his previous reactions to the substances previously purchased from Howard, it becomes less likely that Brown was mistaken about the nature of the substance he injected on February 2, 1970.

The question of whether the probative value of the evidence that Brown had made over 100 previous buys from Howard outweighs its prejudicial impact presents a close question. Evidence that Howard had previously dealt in drugs while relevant in the context of this case, creates a danger of jury misuse of such evidence. However, much of the prejudicial effect of the testimony by Brown that he made over 100 buys from Howard was weakened by the fact that Brown had already been permitted to testify without objection that Howard was one of the persons from whom he had previously purchased heroin in Alaska. Thus, we conclude that the trial court did not commit reversible error in allowing Brown's testimony as to the previous buys of what he believed to be heroin from Howard. The jury already had evidence before it that Brown had made previous buys of what he believed to be heroin from Howard.[10] The only additional fact which the questioned testimony placed before the jury was the number of transactions Brown had with Howard. In these circumstances we cannot say that the prejudicial effect of this evidence outweighed its probative value.[11]

Affirmed.

BOOCHEVER, J., not participating.

967 (Alaska 1968) ; Harper v. United States, 99 U.S.App.D.C. 324, 239 F.2d 945, 946 (1956) ; C. McCormick, Handbook of the Law of Evidence § 157, at 332–33 (1954).

10. C. McCormick, Handbook of the Law of Evidence § 157, at 332–33 (1954) ; State v. Ellis, 243 Or. 190, 412 P.2d 518 (1966).

11. Cf. Tarnef v. State, 492 P.2d 109, 117 (Alaska 1971). In Tarnef we were concerned with the possibility of an abuse of the trial court's discretion in the denial of a motion for mistrial. The motion was based on the admission of allegedly prejudicial testimony of prior drug sales.