387 A.2d 46

**COMMONWEALTH of Pennsylvania**

v.

**Irma Helen GARCIA, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 14, 1976.

Decided April 28, 1978.

408

410

412

414

Hamilton C. Davis, Krawitz, Sigal & Ridley, Marshall E. Anders, Milford, for appellant.

Nicholas A. Barna, Stephen G. Bresset, Honesdale, for appellee.

Before EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

O'BRIEN, Justice.

Appellant, Irma Helen Garcia, was tried in the Court of Common Pleas of Wayne County and was convicted of

murder of the first degree and conspiracy to commit murder. She was sentenced to imprisonment for life on the former charge and for ten-to-twenty years on the latter, the sentences to run concurrently. She appeals from the judgment of sentence imposed on the murder conviction.

This case arose from the death of appellant's husband, Senen Garcia. The facts surrounding this case are: Ruth and George Gustin, who resided near the Garcias in Waymart, Pennsylvania, were awakened in their home by a loud noise between 4:00 and 5:00 a. m. on August 10, 1973. They saw a light burning a short distance away but investigated no further, thinking nothing was wrong. At approximately 7:30 that morning, Ruth Gustin and Ruth Wenk, a neighbor, left for work. They found that a car had gone off the road and down a hill near the Gustin home. They looked and found what appeared to be the remains of a human skeleton behind the driver's seat. They called the police, who investigated, along with the Wayne County Coroner, and had the car examined and various tests performed on the remains and bone fragments found therein. It was determined that the car belonged to Senen Garcia and that the body was Garcia's. The investigation further revealed that the car had been doused with gasoline and set on fire, burning the body, but Garcia was dead before the fire.

Further investigation led to the arrest of appellant, Irma Helen Garcia; Cathy Brooks, her sixteen-year-old daughter by a previous marriage; David Lamberton, Cathy's boyfriend; and Glen Rolison, appellant's paramour. Rolison was convicted of murder and conspiracy to commit murder in connection with Senen Garcia's death. Brooks and Lamberton pleaded guilty to participating in the murder and testified against appellant at her trial. Their testimony was that the four had planned the murder for some time, motivated by appellant's desire to end her marriage, and that their plan was carried out the evening of August 9, 1973 and the morning of the 10th in the following manner: appellant and Brooks, at the Garcia home, put sleeping pills in some beer that the decedent was to drink. The decedent subse-

quently went to his bedroom and went to sleep. Lamberton and Rolison then went to the house. Rolison struck the decedent in the head several times with a spike. Satisfied that he was dead, Lamberton and Rolison took his body and put it behind the wheel of his car on top of the hill above the spot where it was discovered. They doused the car with gasoline, set it on fire, and pushed it off, hoping that the incident would appear to be accidental.

Appellant first argues that she is entitled to a discharge on the criminal charges because of a delay in the setting of her bail. We do not agree.

Appellant was arrested and incarcerated on September 25, 1973. On December 4, 1973, after the appointment of counsel, bail was requested and fixed, and appellant was released. She contends that this seventy-day delay hindered the preparation of her defense; however, she makes no specific allegations of prejudice that resulted from the delay. Having articulated no specific prejudice, we find appellant's contention meritless.

Appellant next argues that the attorneys appointed to represent her were appointed too late to prepare an adequate defense. We do not agree. The trial court, accepting appellant's claim of entitlement to appointed counsel, appointed Marshall E. Anders on December 4, 1973. In response to Anders' requests for additional help, the court appointed Hamilton C. Davis on March 5, 1974, and Mark B. Fox on April 26, 1974. The trial commenced on August 5, 1974, allowing eight months for preparation. Problems from late appointment of counsel are normally a result of appointment a short time before trial. Any resulting prejudice from a late appointment is curable by granting additional time. *U. S. ex rel Spears v. Rundle*, 405 F.2d 1037 (3d Cir. 1969). Eight months was adequate time for preparation.

Assuming, *arguendo*, that there was a late appointment in this case, it was not prejudicial *per se*. Defendant has the burden to show prejudice. That determination

depends on whether adequate representation was actually provided. *Moore v. United States*, 432 F.2d 730 (3d Cir. 1970). In *Commonwealth v. Woody*, 440 Pa. 569, 271 A.2d 477 (1970), counsel claimed to have lacked time to prepare, but we found representation to have been adequate in view of the fact that a vigorous defense was presented with thorough cross-examination of witnesses and numerous exceptions and objections on behalf of defendant. The record in the instant case shows a similarly vigorous defense. Defense counsel were diligent in presenting objections and cross-examining witnesses during the Commonwealth's case, and they also presented a comprehensive case of their own, calling fourteen witnesses, including appellant, and examining them extensively. They made numerous motions on behalf of their client, seeking to put in whatever evidence would help her on the record in the instant case. We are of the opinion that appellant's claim of prejudice because of an allegedly late appointment of counsel is meritless.

■■ Appellant next argues that she was not adequately represented at the preliminary hearing on October 4, 1973. The trial judge, James Rutherford, appointed his son, Albert G. Rutherford, to represent appellant at the hearing. Appellant claims that her right to competent counsel was denied because attorney Rutherford was only appointed for the preliminary hearing. She claims that his appointment could only have been for the hearing because Judge Rutherford could not have presided at a trial at which his son was counsel. She asserts that a defendant cannot be represented by different counsel at the preliminary hearing and at trial. However, she does not cite, and we cannot find, any law to support that assertion. She makes no specific allegation of prejudice. To grant relief in this case, we would have to find that a change in counsel between the preliminary hearing and trial prevents competent representation from being provided. We do not so find. Counsel's representation is presumed to be competent and the defendant has the burden to show otherwise. *Com. ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Appellant hav-

418

ing failed to allege and to establish incompetent representation, we find no error.[1]

Appellant alleges various errors in the conduct of the trial as grounds for the granting of a new trial. The first alleged error occurred when the court denied without a hearing a defense motion to discover the names and addresses of the Commonwealth witnesses and also denied permission to inspect the automobile in which the victim's body was found. We find no error.

The then-applicable criminal discovery rule was Pa.R. Crim.P. 310, which stated:[2]

"Rule 310. Pretrial Discovery and Inspection

"All applications of a defendant for pretrial discovery and inspection shall be made not less than five days prior to the scheduled date of trial. The court may order the attorney for the Commonwealth to permit the defendant or his attorney, and such persons as are necessary to assist him, to inspect and copy or photograph any written confessions and written statements made by the defendant. No other discovery or inspection shall be ordered except upon proof by the defendant, after hearing, of exceptional circumstances and compelling reasons. The order shall specify the time, place and manner of making discovery or inspection and may prescribe such terms and conditions as are necessary and proper. In no event, however, shall the court order pretrial discovery or inspection of written statements of witnesses in the possession of the Commonwealth."

Rule 310 provides that evidence other than written statements or confessions of the defendant is discoverable by the defense only on order of court after proof of exceptional

1. In regard to the family relationship, it would seem that if there is a party that has reason to object, it is the Commonwealth, which has not done so.

2. This Court, on June 29, 1977, amended the Pennsylvania Rules of Criminal Procedure governing discovery. The new discovery rules became effective January 1, 1978, and are not applicable to the instant case.

circumstances and compelling reasons. In *Commonwealth v. Ware*, 459 Pa. 334, 329 A.2d 258 (1974), we held that denial of pretrial discovery of the identities of prosecution witnesses did not deny a fair trial, but that such denial was proper without a hearing in the absence of exceptional circumstances and compelling reasons. Discovery of physical evidence is to be governed similarly to that of the names of witnesses. *Lewis v. Lebanon Court of Com. Pleas*, 436 Pa. 296, 260 A.2d 184 (1969). Appellant made no allegation in her request as to what exceptional circumstances and compelling reasons existed to justify discovery or how she was harmed by its denial. The trial court acted properly under the rule.

Appellant next claims that Rule 310, as applied, is unconstitutional in denying her right to effective assistance of counsel under the Sixth Amendment to the United States Constitution. Article I, Section 9 of the Pennsylvania Constitution. We do not agree. Appellant does not present any specific allegations of prejudice. Absent any allegation of prejudice or harm, we find appellant's contention to be meritless.

Appellant next argues that the trial court erred in overruling a defense objection to a remark made by the district attorney in his closing statement and the court's refusal to give a curative instruction. The remark concerned the defense theory of the case. Appellant testified that on the night of her husband's death he received a telephone call and then left their house without saying where he was going. She further testified that she heard nothing until the next day, when she was informed that a body believed, but not yet confirmed to be his, had been found. She stated that she had no knowledge of what had happened. The district attorney went over evidence that he said supported the Commonwealth's version of the facts and refuted the appellant's. He made the remark that brought on the defense objection while referring to the testimony of a witness, Albert Curtis, who said that during the evening of August 9, 1973, he saw appellant riding in a truck with Rolison and another person that he could not identify. The

district attorney said that it did not seem plausible that Brooks and Lamberton could have made up their story if appellant was seen as the witness testified he saw her. His words were: "This great plan these two kids have conjured up, they even arranged for him to see it. I think it is preposterous." Appellant claims that the remark was intemperate so as to prejudice the jury when coupled with the court's statement that "That is not objectionable." We find no reversible error. A remark made by a prosecuting attorney does not necessarily require a new trial when it is intemperate, the trial court having discretion to determine whether such remarks are prejudicial. *Commonwealth v. Simon*, 432 Pa. 386, 248 A.2d 289 (1968).

In *Commonwealth v. Stoltzfus*, 462 Pa. 43, 60, 337 A.2d 873, 881 (1975), the district attorney, commenting on a convicted murder defendant's story, said:

" '[I]f it weren't for the tragedy of the situation, I would sometimes picture a Keystone Cop's testimony' and 'If it weren't for the tragedy of this case, those lines would be some of the funniest lines in the court room, because they are utterly unbelievable.' "

We found that the remarks were intemperate and improper but that there was no abuse of discretion in refusing to declare a mistrial. In the instant case, the remarks in question are mild compared to those in *Stoltzfus*. The comments of the district attorney were not so unavoidably prejudicial as to warrant a finding of abuse of discretion.

In *Commonwealth v. Goosby*, 450 Pa. 609, 611, 301 A.2d 673, 674 (1973), we stated that:

". . . 'Every unwise or irrelevant remark made in the course of a trial by a judge, a witness, or counsel does not compel the granting of a new trial. *A new trial is required when the remark is prejudicial; that is, when it is of such a nature or substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial.* Com. v. Hales, 384 Pa. 153, 154, 119 A.2d 520; Com. v. Stallone, supra, 281 Pa. 41, 44, 126 A. 56; Com. v. Savor, 180 Pa.Super.

469, 119 A.2d 849, affirmed in 386 Pa. 523, 126 A.2d 444; *Com. v. Meyers*, 290 Pa. 573, 581, 139 A. 374.' *Commonwealth v. Phillips*, 183 Pa.Super. 377, 382, 132 A.2d 733, 736 (1957)." (Emphasis in original.)

We do not think we can reasonably say that the appellant here was denied a fair and impartial trial. To do so, we would have to determine that the jury was misled in a particular way. Appellant does not allege prejudice with the necessary particularity and we find no specific prejudice.

 Appellant next contends that the trial court erred in allowing Roy Draper, a friend of David Lamberton, to testify concerning a conversation he had with Lamberton in July of 1973. Draper testified that he knew Lamberton had a girlfriend and that Lamberton said, "Do you know anybody who would bump her old man off for a thousand dollars?" We find that the testimony was admissible under a hearsay exception that allows statements of a co-conspirator to be admitted against the defendant, if they are made during the conspiracy, in furtherance thereof, and where there is other evidence of the existence of the conspiracy. We recognized the admissibility of a statement under those circumstances in *Commonwealth v. Ellsworth*, 409 Pa. 505, 187 A.2d 640 (1963), although in that case we found the statement in question to be inadmissible because it was made after the conspiracy had ended.

*Commonwealth v. Hirsch*, 225 Pa.Super. 494, 311 A.2d 679 (1973), illustrates a situation where a statement was properly admitted under the above principle. The court there held that a witness who cohabited with a robbery defendant's co-conspirator and testified on conversations occurring in her presence between defendant and accomplices thereby laid a sufficient foundation for introducing admissions made by accomplices out of the presence of the defendant. In the instant case, Draper's testimony was admissible because it was preceded by the testimony of Cathy Brooks. Brooks described the conspiracy so as to lay an adequate foundation for the admission of such evidence. The statement was made pursuant to a conspiracy that continued to involve the

defendant and culminated subsequently in the death of the decedent, so the requirement that it be made during the conspiracy was met.

 There is one other occasion at which appellant alleges that evidence was erroneously admitted. That occurred when the district attorney showed Cathy Brooks a vial containing certain capsules. Brooks testified that the capsules were sleeping pills and were identical to the medication that she and her mother administered to the decedent the night he died. She read the label, which said, "Mrs. Irma Garcia. Take one capsule at bedtime for sleep." Appellant objected to this on the basis that the pills were not properly authenticated, claiming that expertise not possessed by Brooks was required to identify the contents of the vial. We do not think that expert authentication was necessary. Even though Brooks was not an expert, she could testify as she did on the basis of personal knowledge. We base our holding on *Commonwealth v. Harris*, 186 Pa.Super. 59, 140 A.2d 344 (1958), where the court approved of a heroin user identifying the drug on the basis of his experience without being an expert. The court stated that the trial court's determination that the witness had sufficient knowledge was not reversible in the absence of clear error.

The *Fumea Liquor License Case*, 186 Pa.Super. 609, 142 A.2d 326 (1958), and *Secrist Liquor License Case*, 195 Pa.Super. 73, 169 A.2d 314 (1961), are also instructive. In each of those cases, a liquor license was revoked for sales to minors. The evidence against the licensees consisted of the testimony of the involved minors that the licensees had sold them beer. The licensees challenged the qualifications of the witnesses to identify the beverage in question as beer and argued that a chemical analysis should have been required. The court found no need for a chemist. We approve of these decisions. It seems reasonable to us to find that Brooks had sufficient personal knowledge to identify the sleeping pills. There is no clear error such as would require reversal.

Appellant also alleges that the testimony should have been disallowed because the pills were obtained as a result of an

unconstitutional search. They were obtained by a state trooper who searched the Garcia home on November 20, 1973, at which time appellant was incarcerated. Cathy Brooks consented to the search. A warrant had been issued for the search, but the trooper did not use the warrant as authority to conduct it. Brooks consented to the search without the warrant being executed. Therefore, it is irrelevant whether the warrant was properly issued. The validity of the search will depend on whether Brooks had the power to give consent.

A number of cases decided by the United States Supreme Court and this court recognize that a search of a defendant's property may be consented to by a party other than the defendant under certain circumstances. In *Frazier v. Cupp*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), a defendant was bound by a co-defendant's consent to a search of a duffel bag at the latter's home where both defendants had the same right to use the bag. A defendant's wife had the power to consent to a search of their home. *Coolidge v. New Hampshire*, 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). See also *United States v. Matlock*, 415 U.S. 164, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974). This court, in *Com. ex rel. Cabey v. Rundle*, 432 Pa. 466, 248 A.2d 197 (1968), allowed the defendant's wife to consent on the basis of joint control to a search of a garage leased by defendant where she had a key, a right of entry and there was no indication that the defendant intended to exclude her. See *Commonwealth v. Biebighauser*, 450 Pa. 336, 300 A.2d 70 (1973), *Commonwealth v. Hrynkow*, 457 Pa. 529, 330 A.2d 858 (1974).

 Courts have considered other factual situations where third party consent will not validate a search. A third party with insufficient dominion over the premises may not consent to a search thereof. That was the basis for finding that a landlord cannot consent to a search of a tenant's premises. *Chapman v. United States*, 365 U.S. 610, 81 S.Ct. 776, 5 L.Ed.2d 828 (1961), and that a hotel clerk may not authorize a search of a guest's room, *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964). The

third party consent cases have all centered around whether that third party had co-equal dominion and control over the area or property to be searched.

In the instant case Brooks did not have dominion over the home equal to that of appellant. The appellant had the power to determine the extent of her daughter's authority to admit people to the house and therefore her consent was ineffective.

Our finding that the search was improper will not lead us to reverse the conviction, as we find the error to be harmless. Introduction of evidence obtained through an improper search is harmless if it is only cumulative and the Commonwealth's evidence is otherwise sufficient for conviction. *Commonwealth v. Mamon*, 449 Pa. 249, 297 A.2d 471 (1972). Brooks had already testified without objection that she and appellant put sleeping pills into a can of beer that the decedent drank. This testimony from her own personal knowledge was sufficient to show that the pills had been used. Erroneously admitted evidence is harmless if there is other evidence to establish the same facts. *Commonwealth v. Thomas*, 410 Pa. 160, 189 A.2d 255 (1963), cert. denied, 375 U.S. 856, 84 S.Ct. 118, 11 L.Ed.2d 83 (1963). The evidence against appellant was extensive, leading to the conclusion that the identification of the sleeping pills was not significant. See *Commonwealth v. Lopinson*, 427 Pa. 284, 234 A.2d 552 (1967).

Appellant's remaining allegations of error relate to her efforts to have Brooks declared incompetent to testify, or failing that to impeach her credibility, because of her having been treated in a mental hospital. Brooks was diagnosed as schizophrenic at the age of thirteen at St. Joseph's Hospital in Paterson, N. J. She was committed to Allentown State Mental Hospital shortly after her arrest on September 25, 1973, and again diagnosed as schizophrenic. She was still a patient there at the time of trial. The court declared her competent to testify after refusing to hold a hearing or order a psychiatric examination. This was not

improper. The trial court has discretion to determine competency. *Commonwealth v. Kosh*, 305 Pa. 146, 157 A. 479 (1931). There is a presumption of competency which the opponent of a witness has the burden to overcome and which is not defeated by a bare showing of mental illness. *Commonwealth v. Ware*, 459 Pa. 334, 329 A.2d 258 (1974). The court also has discretion as to whether it will order a psychiatric examination of a witness but should not do so without a need for it being shown. *Commonwealth v. Jennings*, 446 Pa. 294, 285 A.2d 143 (1971).

 Moreover, at trial, the defense cross-examined Brooks at length. Counsel brought out the fact that Brooks had been in mental hospitals and questioned her as to the length and nature of her treatment. At the conclusion of the cross-examination, defense counsel requested but was denied permission to continue to cross-examine Brooks after reviewing certain records from Allentown State Hospital that were made available to the defense. We find no reversible error. The trial court had broad discretion in the conduct of cross-examination, especially on collateral matters. *Berkley v. Jeannette*, 373 Pa. 376, 96 A.2d 118 (1953). The matter involved was collateral, as the trial was held not to determine the mental condition of Cathy Brooks, but to determine whether appellant was guilty of murder. An abuse of discretion will not be found if the defendant's right to full and effective cross-examination is not abridged, even if the defense is not permitted to cross-examine in the manner it desires. *Commonwealth v. Bailey*, 450 Pa. 201, 299 A.2d 298 (1973). The record shows a thorough cross-examination of Brooks that brought out the relevant facts of her condition. We find no abuse of discretion in the limiting of cross-examination.

In presenting appellant's case at trial, the defense desired for impeachment purposes to call as a witness Wayne Weimuth, an Allentown State Hospital staff psychologist who had examined Brooks, and to introduce a letter from the hospital containing the diagnosis of Brooks' condition, neither of which it was permitted to do. The court acted properly in refusing both requests.

■ The testimony of Weimuth was inadmissible because of privilege. The defense was seeking to elicit information acquired in the course of examining Brooks, which was privileged under the Act of March 23, 1972, P.L. 136, No. 52, § 13, 63 P.S. § 1213, which reads as follows:

"A person licensed as a psychologist under the provisions of this act cannot, without the written consent of his client, be examined in a civil or criminal action as to any information acquired in the course of his professional services in behalf of the client. The confidential relations and communication between a psychologist and his client are on the same basis as those provided by law between an attorney and client, and nothing in this act shall be construed to require any such privileged communication to be disclosed."

■ The letter in question concerned a diagnosis of Brooks' condition. It was written by John W. Roop, M.D., the Superintendent of Allentown State Hospital, dated February 27, 1974, and addressed to the court. It was based on hospital records, Roop not having examined Brooks himself. Appellant erroneously claims that the letter was admissible under the Uniform Business Records as Evidence Act, Act of May 4, 1939, P.L. 42, No. 35, § 2, 28 P.S. § 91b, under which:

"A record of an act, condition or event shall, in so far as relevant, be competent evidence if the custodian or other qualified witness testifies to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and if, in the opinion of the court, the sources of information, method and time of preparation were such as to justify its admission."

The provision applies to hospital records, *Commonwealth v. Mobley*, 450 Pa. 431, 301 A.2d 622 (1973), but Roop's letter was not the type of record that would be admissible. At best it was a statement based thereon. It was made sometime after Brooks was examined by other medical personnel. Moreover, the writing of letters to judges is not done by the hospital in the ordinary course of business. If it qualified as

a hospital record, it would still not be admissible. Hospital records are admissible to show the facts of hospitalization and treatment but not the diagnosis. *Commonwealth v. DiGiacomo*, 463 Pa. 449, 345 A.2d 605 (1975). Brooks' hospitalization and treatments were already established. The Roop letter was a diagnosis and judgment of Brooks' illness and, therefore, is inadmissible under the Uniform Business Records as Evidence Act, *supra*.

We conclude that there has not been such error as would require a new trial.

The judgment of sentence is affirmed.

JONES, former C. J., took no part in the consideration or decision of this case.

EAGEN, C. J., and NIX, J., concur in the result.

ROBERTS, J., files a dissenting opinion in which MANDERINO, J., joins.

MANDERINO, J., files a dissenting opinion in which ROBERTS, J., joins.

ROBERTS, Justice, dissenting.

I cannot agree that the use against appellant of a vial of sleeping pills obtained without a valid consent was harmless error. I dissent and would reverse appellant's conviction and remand for a new trial.

The theory of the prosecution was that appellant, her daughter, her paramour, and her daughter's boyfriend conspired to murder the victim, appellant's husband. The two women supposedly placed sleeping pills in the victim's beer. After the victim fell asleep, the men allegedly killed him and disposed of his body.

The principal evidence of appellant's claimed participation in this crime is the testimony of her daughter that the two placed sleeping pills in the beer. The daughter also identified a vial of pills as sleeping pills appellant had in her possession at the time of the crime. The daughter read from the label of the bottle, "Mrs. Irma Garcia. Take one

capsule at bedtime for sleep." The vial was not admitted into evidence.

The majority concludes that this vial of pills was obtained during an unconstitutional search of appellant's home. With this conclusion, I agree. The majority asserts, however, that this error was harmless. With this conclusion, I cannot agree.

To be harmless, a constitutional error must be harmless beyond a reasonable doubt. E. g., *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1968). Further, it is the Commonwealth which has the burden of demonstrating such harmlessness. *Commonwealth v. Davis*, 452 Pa. 171, 177, 305 A.2d 715, 719 (1973). I cannot conclude beyond a reasonable doubt that this error could not have "contributed to the verdict" of the jury. *Commonwealth v. Story*, 476 Pa. 391, ——, 383 A.2d 155, 164 (1978). Indeed, it is highly likely that this error did affect the verdict.

The testimony of appellant's daughter that appellant placed sleeping pills in the victim's beer was uncorroborated by testimony. The only evidence to corroborate it was the vial of pills. Appellant's daughter was subject to intense cross-examination, especially on the subject of her mental stability. Disbelief of the daughter's testimony would have been particularly reasonable because the theory that the two men simply killed the victim while he was in a natural sleep would also have accounted for the murder. The vial of pills with appellant's name on it was the only physical evidence indicating that appellant had access to the sleeping pills she allegedly placed in the victim's beer.

Thus, a juror who might not have believed the daughter's story without some extrinsic corroborating evidence might well have believed the story after seeing the vial. In these circumstances, I cannot conclude that presentation of the vial of pills to the jury was harmless.

MANDERINO, J., joins in this dissenting opinion.

MANDERINO, Justice, dissenting.

The majority is correct in stating that the mental competency of a witness is presumed until the party opposing the witness proves him to be incompetent. However,

"The fact that the witness is, at the time of testifying, or was shortly beforehand, a lawful inmate of an asylum for mental disease or defect, or an adjudged lunatic or defective, *makes it necessary that his capacity should be examined into* and an express finding appear." *Commonwealth v. Ware*, 459 Pa. 334, 352, 329 A.2d 258, 267 (1974), *citing* 2 J. Wigmore, Evidence § 497, at 589 (3d ed. 1940) and *District of Columbia's Appeal*, 343 Pa. 65, 72, 21 A.2d 883, 887 (1941). [Emphasis added].

The witness Cathy Brooks had been diagnosed as schizophrenic three years before this trial and had been committed to Allentown State Mental Hospital shortly after her arrest, still diagnosed as schizophrenic. She was a patient there at time of trial. These facts were certainly sufficient to cast considerable doubt upon her capacity to testify and to show a need for psychiatric examination or, at the least, a hearing to determine her competency. Having shown such need, the appellant should have been given the opportunity to establish by expert testimony the incompetency of the witness. The trial court improperly admitted Brooks' testimony when appellant had clearly shown the need for further inquiry into her competency.

In addition, I cannot agree that denial of pre-trial discovery was proper. The Sixth Amendment guarantees to an accused the right to *effective* assistance of counsel. Any evidence which could reasonably aid counsel in his defense should not be denied him. Failure to allow discovery of names of witnesses, physical evidence, or other pertinent material in the hands of the prosecution detracts from counsel's ability to defend his client and leaves him at a substantial disadvantage. I must therefore agree with appellant that Rule 310, as applied, unconstitutionally denies

430

her right to effective counsel which the Sixth Amendment guarantees.

I dissent.

ROBERTS, J., joins in this dissenting opinion.