566 A.2d 254

**COMMONWEALTH of Pennsylvania**

v.

**Richard HOLLIHAN, Jr., Appellant.**

Superior Court of Pennsylvania.

Argued May 16, 1989.

Filed Sept. 28, 1989.

Reargument Denied Nov. 6, 1989.

James R. Wilson, Asst. Public Defender, Pittsburgh, for appellant.

Edward M. Clark, Asst. Dist. Atty., Pittsburgh, for Com.

Before BROSKY, POPOVICH and MONTGOMERY, JJ.

BROSKY, Judge.

This is an appeal from the judgment of sentence of life imprisonment entered against appellant following his conviction by a jury of first-degree murder.

Appellant's issues on appeal are that: (1) The trial court erred in admitting an out-of-court statement under the excited utterance exception to the hearsay rule; (2) the trial court erred in admitting the "psychological" testimony of Detective Payne; (3) appellant's trial counsel was ineffective for failing to object to a portion of the trial court's jury charge; and (4) his trial counsel was ineffective for failing to object to the firing of the murder weapon in the presence of the jury, and post-trial counsel was ineffective for failing to preserve this issue for appellate review. We affirm.

Appellant shot and killed his wife with a sawed-off shotgun. He claimed at trial that the gun accidentally discharged, but a jury found him guilty of first-degree murder.

Appellant's first claim is that the trial court erred in admitting his seventeen year old daughter Jewelie's out-of-court statement under the res gestae exception to the hearsay rule, which encompasses the excited utterance exception. Appellant admits that Jewelie was excited, the statement was spontaneous, and it was within a very short time of the incident. Appellant's Brief at p. 10. But he avers three reasons why the statement was inadmissible and we will address them seriatim.

■ Appellant first claims that Jewelie did not perceive the incident. Jewelie was on the first floor of the family home and appellant and the victim were in their second floor bedroom. Jewelie heard a loud noise, akin to a door slamming. Immediately thereafter, appellant told Jewelie to, "[G]et an ambulance, your mother's hurt." N.T., 1/28–2/3/86, at p. 270. Jewelie ran up the steps to the second floor, saw a leg protruding from the bedroom, and ran back

downstairs and to the next-door neighbor's house. While there, she made the statements in question to neighbor Joseph Dorsch, and he reiterated them at trial:

> She was very upset. My mother-in-law was hugging her, trying to calm her down, and during the time, she was talking like she knew something like this was going to happen eventually, she knew—
>
> . . . .
>
> I really don't remember the exact words, but it was to the effect of she knew something was going to happen sooner or later. It was like she was—
>
> . . . .
>
> She was upset, oh, yeah. The way she talked, the way I took it, it was like she had been in fear of something like this happening at sometime or other.

*Id.* at pp. 23, 28. Jewelie did not learn that her mother had been shot and killed until after she made the statement.

> To qualify a statement as an excited utterance the statement must be:
>
>> a spontaneous declaration by a person whose mind has been suddenly made subject to an overpowering emotion caused by some unexpected and shocking occurrence, which that person had just participated in or closely witnessed, and made in reference to some phase of that occurrence which he perceived, and this declaration must be made so near the occurrence both in time and place as to exclude the likelihood of its having emanated in whole or in part from his reflective faculties.

*Commonwealth v. Stohr,* 361 Pa.Super. 293, 297, 522 A.2d 589, 591 (1987); *Commonwealth v. Pronkoskie,* 477 Pa. 132, 137–38, 383 A.2d 858, 860 (1978) (citation omitted). There is no requirement that the available declarant corroborate the statement. *Pennsylvania Evidence,* L. Packel and A. Poulin, at p. 564 (1987). If the declarant is unable to remember the statement, it is still admissible. *Id.*

■ We find that Jewelie clearly perceived the incident giving rise to the excited utterance. Although she didn't realize that her mother had been shot and killed, the auditory instruction from appellant, coupled with Jewelie's visual perception of a leg, establishes that she perceived an unexpected and shocking occurrence.

■ Appellant next claims that Jewelie's statement that, "something like this was going to happen sooner or later[,]" *supra*, was only an opinion of a past event, and there is therefore no way to ascertain her rationale for the opinion.

To be admissible, the "opinion" stated in an out-of-court statement by a person who has witnessed a shocking occurrence should (a) be rationally based upon personal knowledge of the facts upon which she based her conclusion, and (b) her conclusion should not mislead the jury. *Commonwealth v. Galloway*, 336 Pa.Super. 225, 485 A.2d 776 (1984).

We agree with appellant's contention. *Galloway* mandates that the statement be a condensed version of what the declarant had *just* perceived. Jewelie testified that her parents had not fought on the evening of the murder; therefore, there were no facts within her personal knowledge upon which she could have rationally based her conclusion.

Nevertheless, we find that the trial court's admission of Jewelie's statement was harmless error. An error is harmless only if an appellate court is convinced beyond a reasonable doubt that it is so. *Commonwealth v. Story*, 476 Pa. 391, 383 A.2d 155 (1978).

Immediately after Mr. Dorsch reiterated Jewelie's statement, the trial court, after explaining the excited utterance to the hearsay rule to the jury, further stated that:

We have a situation here where I think we're going to have to inquire later on—the person who is alleged to have made this utterance is, in fact, in the courtroom—what that was based upon.

I don't know that we know at this point in time whether Jewelie Hollihan had any knowledge whatsoever of exact-

ly what happened to her mother other than the fact that she had been told to call an ambulance, call the police. We don't know what she knew at that point in time and what formed the basis.

All we know is it was in a short period of time after this sound was heard by this witness after there was a lot of confusion that was in this setting that this utterance was made.

So it's not offered for the truth of what she said. It's merely offered to establish that she said it.

What's it's based upon, we don't know at this point in time, and I don't think you can speculate about what that means until you know.

N.T., 1/28–2/3/86, at 29–30. Therefore, the trial court admonished the jury not to read anything into Jewelie's statement.

Mr. Dorsch also corroborated Jewelie's statement. An error may be harmless if properly admitted evidence is substantially similar to the erroneously admitted evidence. *Commonwealth v. Story, supra.* Mr. Dorsch testified that appellant and his wife argued at times, and that he (Dorsch) and his wife were afraid that appellant would shoot a gun in his own house. N.T., 1/28–2/3/86, at 33.

Furthermore, the evidence against appellant was overwhelming.

[I]n applying the overwhelming evidence test to determine if an error is harmless, a court may rely only on uncontradicted evidence. The uncontradicted evidence of guilt must be so overwhelming, and the prejudicial effect of the improperly admitted evidence so insignificant by comparison, that it is clear beyond a reasonable doubt that the error could not have contributed to the verdict.

*Commonwealth v. Story, supra* at 417, 383 A.2d at 168. Appellant told a police officer at the scene that he and his wife fought frequently, were fighting that evening, and that he lost control of himself. N.T., 1/28–2/3/86, at 75. When told at the scene that he would be charged with

homicide, appellant stated that he was under a lot of financial pressure, but his wife never wanted to listen to his problems, so he killed her. *Id.* at 127. In the police car on the way to the station, appellant volunteered in a normal tone that he killed his wife, and his daughters were going to be upset with him. *Id.* at 94. Appellant stated that he loaded and unloaded the gun twice; when he loaded it a third time he shot his wife. *Id.* at 103.

Appellant claimed at trial that the gun accidentally discharged. *Id.* at 344. While claiming that the killing was accidental, he did not contradict the above testimony of the police officers, and said testimony established his guilt overwhelmingly. Therefore, the overwhelming evidence of guilt was uncontradicted, the prejudicial effect of the improperly admitted evidence was insignificant by comparison, and the error was harmless.

Appellant's final contention regarding his first issue is that the phrase "something like this," from Jewelie's statement "[I] knew something like this was going to happen sooner or later[,]" is vague.

We find that the .fact that the statement is vague works to appellant's advantage as well as the Commonwealth's. Therefore, this issue is meritless.

Appellant's second issue is that the "psychological" testimony of Detective Robert Payne was irrelevant and prejudicial. Detective Payne was one of the investigating officers in the case. During appellant's trial, the prosecutor asked Detective Payne if appellant's unsolicited comments regarding the killing were unusual in this type of case. Payne responded:

Not necessarily, no. It's been my experience over the number of years that in some of these unfortunate domestic situations, that in many cases, people are under a tremendous amount of pressure to the point of breaking, and once they do react to that pressure and an incident such as this happens, where an individual dies, the pres-

sure is released, almost like opening up a pressure valve, and the weight of the world is off their shoulders.

N.T., 1/28–2/3/86, at 132. After appellant's counsel objected on the grounds that Payne was giving an expert opinion, the prosecutor laid a foundation for the question. Appellant claims on appeal that the information elicited by the prosecutor was improper since appellant did not put his mental capacity at issue.

Initially, we find that appellant has waived this issue since he advances an issue different from that objected to at trial. Nevertheless, we will address it due to the nature of appellant's sentence.

We find that Detective Payne's testimony, although bordering upon expert testimony, did not fit into such classification.

 Whether a witness is qualified as an expert is a matter committed to the sound discretion of the trial court. *Commonwealth v. Worrell*, 277 Pa.Super. 386, 419 A.2d 1199 (1980). "A witness may state relevant facts known to him, because of experience, even though he is not regarded as an expert whose opinion would be admissible on a hypothetical inquiry." *Commonwealth v. Grabowski*, 378 Pa.Super. 454, 465, 549 A.2d 145, 151 (1988). If the witness has any reasonable pretention to specialized knowledge on the subject under investigation he may testify, and the jury will decide how much weight to accord the evidence. *Commonwealth v. Harris*, 186 Pa.Super. 59, 140 A.2d 344 (1958). We find that Detective Payne testified as a layperson with specialized knowledge accumulated through his duties as an investigating officer in homicide cases.

 But, arguendo, even if Payne did testify in the capacity of an expert witness, his testimony was still admissible. The foundation laid for Payne's testimony elicited the following information: Payne has participated in several hundred homicide cases over a ten year period. N.T., 1/28–2/3/86, at 133; fifty percent of the cases involved

domestic disputes, and in a majority of these he was involved in taking statements from or questioning the defendant. *Id.;* Payne has a B.A. degree in administration of justice, and an M.A. in criminology, with a minor in psychology. *Id.* at 133–34.

Therefore, by virtue of his work experience and educational background, Detective Payne was qualified to give an expert opinion regarding appellant's unsolicited statements to the police.

■ Appellant's third issue is that his trial counsel was ineffective for failing to object to the portion of the trial court's charge that informed the jury of the penalty for first degree murder. The trial court stated that:

> Prior to your deliberations, I will inform you as to the penalty for first degree murder. A person who is convicted of murder of the first degree shall be sentenced to a term of life imprisonment. In murder of the first degree the Court has no discretion and must impose a sentence of life imprisonment.

N.T., 1/28–2/3/86, at 454. Appellant claims he was prejudiced by this statement since it made the jury more likely to find him guilty of first-degree murder.

Appellant could have been found guilty of first or third degree murder, voluntary manslaughter or involuntary manslaughter. The jury was thoroughly instructed as to the elements of each possible crime. *Id.* at 446–54. The trial court then instructed the jury that:

> In arriving at a verdict, you should not concern yourselves with any possible future consequences of your verdict, including what the penalty might be if you should find the Defendant guilty.

> . . . .

> Whenever a Defendant has been found guilty, it then becomes my duty to fix the penalty. You have nothing to

do with this, and you should not permit the possibility of punishment to influence your decision in any way.

*Id.* at 460.

The trial court properly complied with the Pennsylvania Standard Jury Instructions (Criminal) when it informed the jury of the penalty for first-degree murder. *Id.* at § 152502 D (Crim.), at pp. 220–21. Since appellant's underlying issue is meritless, his trial counsel was not ineffective for failing to raise it.

Appellant's fourth issue is that his trial and post-trial counsel were ineffective for failing to object and preserve objections to the firing of the shotgun, which was used to kill the victim, in the courtroom. A primer, which is part of a shell and does not make as much noise as a bullet, was fired while the gun was pointed toward the floor. It was fired by Dr. Robert Levine, an expert witness for the prosecution, to demonstrate the amount of force necessary to cause this gun to discharge accidentally. Appellant claims that he was prejudiced since the demonstration could have been shown on videotape and the noise from the discharge was very loud.

Dr. Levine tapped the hammer, which was in the down position, of the gun with a rubber mallet, with no effect. He then hit the hammer harder and the gun discharged. N.T., 1/28–2/3/86, at 203.

An expert witness may testify as to matters within his scientific area of expertise. *Commonwealth v. Johnson*, 373 Pa.Super. 312, 541 A.2d 332 (1988). In determining whether to admit demonstrative evidence in a homicide case, the trial court must first determine if the evidence is inflammatory. *Commonwealth v. Frederick*, 327 Pa.Super. 199, 475 A.2d 754 (1984). If it is, the trial court must then determine if the evidence is of such essential evidentiary value that its need clearly outweighs the likelihood of inflaming the passions of the jurors. *Id.*

■ We find that the demonstration was not inflammatory and its presentation was relevant as appellant claimed that the gun had accidentally discharged. The pressure exerted on the hammer was more clearly conveyed to the nearby jurors than it would have been in a videotape. Furthermore, the jurors could have been negatively influenced against the Commonwealth since they were subjected to a loud noise.

Since appellant's underlying issue is meritless, his trial and post-trial counsel were not ineffective for failing to object to the demonstration or preserve the issue for appellate review.

Judgment of sentence affirmed.

POPOVICH, J., concurs in the result.

MONTGOMERY, J., files a dissenting opinion.

MONTGOMERY, Judge, dissenting.

After carefully and thoroughly reviewing the record in this matter, I am convinced that the appellant is entitled to a new trial due to the ineffective assistance of counsel. Therefore, I respectfully dissent.

The appellant argues that trial counsel was ineffective in failing to object to a firearm demonstration in the jury's presence and that post-trial counsel was also ineffective for failing to raise prior counsel's ineffectiveness. In reviewing a claim of ineffective assistance, we must first determine whether the issue underlying the claim of ineffectiveness is of arguable merit, and, if so, whether the course chosen by counsel had some reasonable basis designed to serve the interests of his client. *Commonwealth v. Buehl*, 510 Pa. 363, 508 A.2d 1167 (1986); *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 235 A.2d 349 (1967). Finally, the petitioner must show that counsel's ineffectiveness prejudiced his case. *Commonwealth v. Pierce*, 515 Pa. 153, 527 A.2d 973 (1987).

I recognize that any in-court demonstration is subject to the trial court's discretion and, therefore, our review is limited accordingly. *Commonwealth v. Kenon*, 333 Pa.Super. 366, 482 A.2d 611 (1984). However, in exercising its discretion, the trial court must determine whether the demonstration is relevant and must also determine if the probative value of the demonstration is outweighed by the potential prejudice to the defendant. *Id.* The demonstration was, arguably, relevant. However, assuming that relevance is not a concern, I cannot agree that the probative value of the demonstration which took place during the trial of this case outweighed the prejudice to the appellant. In my opinion, a review of the record compels a conclusion contrary to that reached by the majority.

The Commonwealth's expert testified that "[he would] demonstrate the force needed to cause the primer to discharge, ... you will see a spit of flame coming out ... you will also heare[sic] a loud noise." (Trial Transcript at 203) When the court inquired if the demonstration was safe, the witness responded: "Yes. I'll have it aimed down toward the floor, and again, you'll see the spit of flame, and you'll hear the sound. Sometimes these primers by themselves will have a very large sound." (Id.) Under the circumstances, I believe the demonstration fell outside the permissible range. Exposing the jury to the sound and "spit of flame" as the purported murder weapon was fired in their presence clearly outweighed, to the appellant's prejudice, any potential probative value of this demonstration. For this reason, I would find trial counsel was ineffective as I am unable to arrive at a single possible explanation justifying counsel's failure to object to the demonstration; nor can I imagine any reasonable basis in counsel's failure designed to effectuate the appellant's interest. Likewise, I would find post-trial counsel ineffective for failing to raise the issue.

For these reasons, I would vacate the judgment of sentence and remand for a new trial.