J. S11034/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
    :    PENNSYLVANIA
    v.    :
    :
DANIEL SOLER,    :    No. 650 EDA 2018
    :
    Appellant    :


Appeal from the PCRA Order, February 9, 2018,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0009434-2012


BEFORE:  SHOGAN, J., MURRAY, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:    **FILED JULY 25, 2019**

Daniel Soler appeals ***pro se*** from the February 9, 2018 order entered by the Court of Common Pleas of Philadelphia County denying his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-9546.  After careful review, we affirm.

The PCRA court provided the following synopsis of the procedural history of this case:

> On January 14, 2014, following a jury trial before [the trial court, appellant] was convicted of one count each of third degree murder (18 Pa.C.S.[A.] § 2502(c)), arson (18 Pa.C.S.[A.] § 3301), conspiracy to commit arson (18 Pa.C.S.[A.] §§ 903 & 3301), carrying a firearm without a license (18 Pa.C.S.[A.] § 6106), and possession of a firearm by a prohibited person (18 Pa.C.S.[A.] § 6105).  [Appellant] was jointly tried with his sister, co-defendant Jacqueline Soler.  On March 14, 2014, the [trial court] imposed an aggregate sentence of forty-five to ninety years[']

incarceration. [Appellant] was represented at trial, sentencing, and on [direct] appeal by Bruce Wolf, Esquire. On December 2, 2015, the Superior Court affirmed the judgment of sentence, and on April 4, 2016, the Supreme Court [of Pennsylvania] denied *allocatur*. [*See Commonwealth v. Soler*, 135 A.3d 648 (Pa.Super. 2015) (unpublished memorandum), *appeal denied*, 136 A.3d 981 (Pa. 2016).]

On January 18, 2017, [appellant] filed a *pro se* petition under the [PCRA], and subsequently filed two Amended Petitions on February 17, 2017 and May 18, 2017 (collectively hereinafter, the "PCRA Petition"). David S. Rudenstein, Esquire was appointed to represent [appellant] on July 12, 2017. On October 4, 2017, pursuant to *Commonwealth v. Finley*, 550 A.2d 213 (Pa.Super. 1988), Mr. Rudenstein filed a letter stating that there was no merit to [appellant's] claims for collateral relief ("*Finley* Letter"). On December 21, 2017, the [PCRA court] issued notice, pursuant to Pa.R.Crim.P. 907 ("907 Notice") of its intention to dismiss [appellant's] petition without a hearing. [Appellant] submitted a response to the [PCRA court's] 907 Notice ("907 Response") on January 3, 2018. On February 9, 2018, the [PCRA court] dismissed [appellant's] PCRA Petition and granted Mr. Rudenstein's motion to withdraw his appearance.

PCRA court opinion, 5/22/18 at 1-2.

Appellant filed a timely notice of appeal to this court on February 27, 2018. On March 2, 2018, the PCRA court ordered appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied. The PCRA court filed an opinion pursuant to Pa.R.A.P. 1925(a).

Appellant raises the following issues for our review:

- 2 -

1.   Did the PCRA court err by failing to find trial counsel ineffective for failing to move to suppress a statement made by [a]ppellant to police who was impaired by the combined effects of alcohol and drugs?

2.   Whether the PCRA court erred in its conclusion that trial counsel was not ineffective for agreeing by stipulation to exclude Detective Dove as a witness without [a]ppellant's knowledge and consent, thus denying him his right to confront and cross-examine Detective Dove in violation of due process?

3.   Was trial counsel ineffective for failing to object to the Commonwealth's stipulation to exclude Detective Dove as a witness and call Detective Dove as a witness concerning the circumstances attendant the taking of [a]ppellant's statement?

4.   Did the PCRA court err by failing to find trial counsel ineffective for not objecting to the Commonwealth's introduction of highly-inflammatory crime scene photographs at trial which caused an outburst among spectators and disruption in the courtroom?

5.   Whether the PCRA court erred in its determination that trial counsel was not ineffective for failing to object to the prosecutrix using herself as a trial prop and allowing the testifying doctor to twice demonstrate where the injuries were on the female victim which was cumulative?

6.   Did the PCRA court err in its conclusion that trial counsel was not ineffective for failing to object to the Commonwealth's evidentiary use of co-defendant Jacqueline Soler's statement at trial[,] who did not testify which prevented [a]ppellant from confronting and cross-examining her in violation of due process

and ***Bruton v. United States***, 391 U.S. 123 (1968)?

7. Did the PCRA court err in its determination that trial counsel was not ineffective for failing to request and/or object to the trial court's refusal to instruct the jury on the lesser-included offenses of voluntary and involuntary manslaughter?

8. Whether the PCRA court erred by not finding trial counsel ineffective for failing to request a mistrial where the jury had informed the court multiple times that they were hopelessly deadlocked and could not reach a unanimous verdict on the charge of first degree murder?

Appellant's brief at 4-5.

Having determined, after careful review, that the Honorable Glenn B. Bronson, in his Rule 1925(a) opinion, ably and comprehensively disposes of appellant's issues on appeal, with appropriate reference to the record and without legal error, we affirm on the basis of that opinion (Finding: trial counsel did not render ineffective assistance when he withdrew a meritless suppression motion with appellant's consent; trial counsel did not agree to a Commonwealth request to exclude certain testimony, as alleged by appellant; trial counsel did not render ineffective assistance by failing to object to a crime scene photograph that, while gruesome, was found by the trial court to be compelling and essential to demonstrate to the jury appellant's criminal intent; trial counsel was not ineffective for failing to object to a demonstration as to the location of the victim's gunshot wounds, which the trial court found was not inflammatory, but rather was a helpful aid to the jury; trial counsel

J. S11034/19

was not ineffective for failing to object to the admission of co-defendant Jacqueline Soler's statement, which had been edited to remove all references to appellant in accordance with ***Bruton v. United States***, 391 U.S. 123 (1968); trial counsel was not ineffective for failing to request a jury instruction for which he had no basis to object; and trial counsel was not ineffective for failing to request a mistrial when he had no basis for such a request; therefore, the PCRA court did not err when it denied appellant's PCRA petition).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/25/19

- 5 -



**FILED**

2018 MAY 22 PM 3: 14

OFFICE OF JUDICIAL RECORDS
CRIMINAL DIVISION
FIRST JUDICIAL DISTRICT
OF PENNSYLVANIA

IN THE COURT OF COMMON PLEAS
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

COMMONWEALTH OF
PENNSYLVANIA

v.

DANIEL SOLER

: CP-51-CR-00009434-2012

CP-51-CR-0009434-2012 Comm. v. Soler, Daniel
Opinion

8113188971

OPINION

BRONSON, J.                                                    May 22, 2018

On January 14, 2014, following a jury trial before this Court, defendant Daniel Soler was

convicted of one count each of third degree murder (18 Pa.C.S. § 2502(c)), arson (18 Pa.C.S. §

3301), conspiracy to commit arson (18 Pa.C.S. §§ 903 & 3301), carrying a firearm without a

license (18 Pa.C.S. § 6106), and possession of a firearm by a prohibited person (18 Pa.C.S. §

6105). Defendant was jointly tried with his sister, co-defendant Jacqueline Soler. On March 14,

2014, the Court imposed an aggregate sentence of forty-five to ninety years incarceration.

Defendant was represented at trial, sentencing, and on appeal by Bruce Wolf, Esquire. On

December 2, 2015, the Superior Court affirmed the judgment of sentence, and on April 4, 2016,

the Supreme Court denied *allocatur*.

On January 18, 2017, defendant filed a *pro se* petition under the Post Conviction Relief

Act ("PCRA"), and subsequently filed two Amended Petitions on February 17, 2017 and May

18, 2017 (collectively hereinafter, the "PCRA Petition"). David S. Rudenstein, Esquire was

appointed to represent defendant on July 12, 2017. On October 4, 2017, pursuant to

*Commonwealth v. Finley*, 550 A.2d 213 (Pa. Super. 1988), Mr. Rudenstein filed a letter stating

that there was no merit to defendant's claims for collateral relief ("*Finley* Letter"). On

December 21, 2017, the Court issued notice, pursuant to Pa.R.Crim.P. 907 ("907 Notice") of its intention to dismiss defendant's petition without a hearing. Defendant submitted a response to the Court's 907 Notice ("907 Response") on January 3, 2018. On February 9, 2018, the Court dismissed defendant's PCRA Petition and granted Mr. Rudenstein's motion to withdraw his appearance.

Defendant has now appealed the Court's dismissal of his PCRA Petition, raising ten issues. *See* Concise Statement of Matters Complained of on Appeal ("Statement of Matters") at ¶¶ a(1-8)-c. They are listed below in their entirety:

a(1). Trial counsel rendered ineffective assistance of counsel by failing to move to suppress Defendant's involuntary statement given to police obtained while Defendant was high on drugs and subject to a coercive environment when questioned by former homicide detective, Ronald Dove and Joseph Bamberski;

a(2). Trial counsel acted ineffectively by agreeing to the Commonwealth's request to exclude former Detective Dove as a witness without first consulting with Defendant which impugned [sic] upon his Sixth Amendment and Article I, § 9 rights of confrontation and cross-examination in violation of due process where Dove had interviewed him for hours prior to Detective Bamberski's arrival. Defendant was not even aware of this agreement until after trial and receipt of his transcript;

a(3). Trial counsel acted ineffectively by failing to object to the prosecutor's informing the Court that she was not putting Detective Dove on the stand because he was the subject of some newspaper articles even though he was one of the lead detectives on the case, thus interfering with Defendant's right to present a defense of his own choosing and right to confront and cross-examine Dove as to the circumstances surrounding his interrogation and giving a statement;

a(4). Trial counsel was ineffective for failing to object to the Commonwealth's admission and use of highly-inflammatory crime scene photographs designed to inflame the jurors and create a fixed hostility, bias and prejudice in the minds of the jurors against Defendant which led to an outburst in the courtroom and caused the trial judge to warn spectators to be quiet or to step out of the courtroom;

2

a(5). Trial counsel acted ineffectively by failing to object when the prosecuting attorney used herself as a human prop permitting the doctor who was testifying to show where the injuries were on the victim who was also a female. There was no need for such a demonstration as the testifying doctor had already conducted his own demonstration for the benefit of the jurors using his own props;

a(6). Trial counsel was ineffective for failing to object to the use of co-defendant Jacqueline Soler's, statement where Defendant was prevented from confronting and cross-examining the witness denying him due process because she did not testify. Despite this fact, the statement was read aloud in court by another corrupt Detective, Detective James Pitts, resulting in a Burton [sic] violation because Defendant was unable to cross-examine the witness concerning the circumstances surrounding and making of the statement to test its veracity;

a(7). Trial counsel acted ineffectively by failing to request and/or object to the trial court's refusal to instruct the jury on the lesser-included offense of involuntary manslaughter;

a(8). Trial counsel was ineffective for not requesting a mistrial where the jurors had informed the Court that they were hopelessly deadlocked on the charge of 1st Degree Murder. Defendant avers that a mistrial was warranted and a new trial should have been granted by the trial court, but instead, the jury was pressured by the Court to come up with a verdict. Deadlocked numerous times on First Degree Murder, the Court then specifically instructed the jury to deliberate on 3rd Degree Murder. The Court's intervention resulted in a Third Degree conviction and likely influenced the jury by suggesting Third Degree Murder resulting in a miscarriage of justice.

b. The PCRA Court erred by failing to credit the newly-discovered evidence submitted and filed by the Defendant concerning corrupt Homicide detective, Ronald Dove, after Dove pled guilty to all charges filed against him, including tampering with/fabricating physical evidence on April 26, 2017. Not only is Dove's conviction relevant to the circumstances surrounding the coercive environment attendant [sic] the Defendant's involuntary statement, but this evidence (1) could not have been obtained prior to the conclusion of the trial of this case; (2) is neither corroborative nor cumulative of other evidence presented; (3) would not have been used solely to impeach the credibility of a witness as Dove did not testify as a witness for the Commonwealth concerning his role in the investigation and the taking of the statement; and (4) would likely compel a different verdict if a new trial were granted. Dove's subsequent conviction raises legitimate questions concerning the circumstances and manner in which the statement was obtained.

3

c.      The PCRA Court erred by failing to credit the Defendant's claims of PCRA counsel ineffectiveness after Defendant forwarded letters of complaint to this Court, and in granting PCRA counsel leave to withdraw, even though PCRA counsel failed to have any meaningful communication with the Defendant prior the filing of a Turner/Finley "no merit" Letter, where PCRA counsel failed to respond to the Defendant's letters attempting to further discuss his claims and the issues he wished to litigate in his PCRA petition in more detail, and where subsequent letters addressed to PCRA counsel asking PCRA counsel to voluntarily withdraw and to this Court requesting the Court to remove Attorney Rudenstein and assign new PCRA counsel where issues of arguable merit were present that required further development at an evidentiary hearing. PCRA counsel's lack of any meaningful communication in this case and failure to amend Defendant's pro se claims by filing an amended petition left Defendant effectively uncounseled. Accordingly PCRA counsel rendered ineffective assistance of counsel.

Statement of Matters at ¶¶ a(1-8)-c. For the reasons set forth below, defendant's claims are without merit, and the PCRA Court's order dismissing his PCRA Petition should be affirmed.

## II. FACTUAL BACKGROUND

This Court set forth the relevant facts in its opinion regarding defendant's direct appeal as follows.

> At trial, the Commonwealth presented the testimony of Philadelphia Fire Marshal Lieutenant George Werez, Philadelphia Fire Department Lieutenant Dan Oaks, Philadelphia Firefighter Ismar Burgos, Philadelphia Police Sergeant Gregory Morace, Philadelphia Police Detectives Joseph Bamberski, James Burns, and James Pitts, Philadelphia Police Officers Clyde Frasier, Tiffany Richardson, Edward Slater, and Gregory Welsh, Chief Medical Examiner Dr. Sam Gulino, as well as D.S.,[1] Joseph Coleman, Aura Bernard, Ryan Gallagher, and Tamika McDuffie. Defendant and his co-defendant did not present any evidence at trial. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence established the following.
>
> On Saturday, March 31, 2012, Tanisha Carr contacted defendant, with whom she had two children, in order to meet and talk about $500 which she had loaned defendant. N.T. 1/8/14 at 234. Carr and defendant shared custody of their daughter, D.S. and their son, D.S.J., who stayed with Carr during the week and with defendant over the weekends. N.T. 1/7/14 at 168-169. At approximately 10:30 p.m., before going to meet with Carr, defendant called his children into his

---

[1] Minor witnesses are identified by their initials to protect their privacy.

4

room and stated that he would be going somewhere. N.T. 1/7/14 at 171-172. While defendant was talking with his children, D.S.J. reached into defendant's coat, which permitted D.S. to see a concealed gun. N.T. 1/7/14 at 172-173. Defendant stated, "I love you no matter what happens," gave his children a hug and a kiss, and then left the house. N.T. 1/7/14 at 174-175.

Carr had arranged to telephone her sister, Tamika McDuffie, upon arriving at the meet location, which she did at 11:43 p.m. N.T. 1/8/14 at 234-235, 247. Upon calling McDuffie, Carr stated, "here comes Danny," and then left the phone active, permitting her sister to listen in on their conversation. N.T. 1/8/14 at 235-236. McDuffie was able to hear Carr state, in a scared tone, "where are we going?" N.T. 1/8/14 at 237. The last words McDuffie heard Carr say was: "Never mind, I don't want the money, just give me my keys so I can go home." N.T. 1/8/14 at 241. Following this statement, the phone went dead and calls by McDuffie were unanswered. N.T. 1/8/14 at 238. Defendant and Carr got into an argument, at which point defendant "snapped," pulled out his gun, and shot Carr multiple times. N.T. 1/9/14 at 62-64. Defendant then drove away, while Carr lay in the passenger seat dying. N.T. 1/9/14 at 65.

Thereafter, defendant called his sister, co-defendant Jacqueline Soler ("Ms. Soler"), informing her that he had just killed a man and arranged to meet with Ms. Soler at their cousin Freddie's home.[2] N.T. 1/8/14 at 10-11; 1/9/14 at 66. Defendant parked the vehicle with Carr's body at 4519 North 3rd Street, Philadelphia, which is a mixed commercial and residential area, at 12:30 a.m., April 1, 2012, and arrived at Freddie's home shortly thereafter. N.T. 1/7/14 at 97; 1/8/14 at 14; 1/9/14 at 66, 130, 132-133.

While at Freddie's home, defendant repeatedly commented that he had "fucked up" and that he was "not going to see my kids." N.T. 1/8/14 at 15-16. Defendant asked if Aura Bernard, Freddie's live in girlfriend, had any gas, stating that he intended to burn the car to get rid of the evidence. N.T. 1/8/14 at 20-21, 26; 1/9/14 at 66. Bernard and Ms. Soler left the house and bought gas at the local 7-Eleven convenience store. N.T. 1/8/14 at 22-23, 42, 145. Upon their return, Bernard gave the gas to defendant, who returned to the parked vehicle while everyone else remained at the home. N.T. 1/8/14 at 24-26; 1/9/14 at 66-67. Defendant poured the gas on the car, on the floor of the car, and on Carr's body before using a lighter to light the gas. N.T. 1/7/14 at 125; 1/9/14 at 66-67, 133-136; Commonwealth exhibit 84 (surveillance video). Defendant lit the fire at approximately 2:19 a.m. N.T. 1/9/14 at 67, 133.

Philadelphia Fire Department personnel arrived at the scene of the car fire at 2:28 a.m., approximately eight minutes after it was lit. N.T. 1/7/14 at 61-62; 1/9/14 at 133. The fire had fully involved the interior passenger compartment and the force of the flame had blown out the vehicle's windows. N.T. 1/7/14 at 62-63, 191.

---

[2] Freddie's real name is Roberto Soler. N.T. 1/8/14 at 9.

5

Upon extinguishing the fire, Carr's body was found slumped across the passenger seat, so badly burned that Fire Department officials could not tell her gender. N.T. 1/7/14 at 65, 192; 1/9/14 at 32. Subsequent investigation revealed that Carr had been shot three times in the torso and once in the chin. N.T. 1/7/14 at 126, 129-133. Carr died within two or three minutes. N.T. 1/7/14 at 142-143.

At approximately 5:30 a.m., April 1, 2012, police contacted Carr's parents, informing them that Carr's burned vehicle had been found with a body inside. N.T. 1/7/14 at 205. Later that day, defendant talked with Carr's step-father, Joseph Coleman Jr., on the phone. *Id.* When Coleman informed defendant that Carr's body had been found, defendant responded, "what that got to do with me?" N.T. 1/7/14 at 206. When Coleman confronted defendant about the $500 defendant owed Carr, defendant hung up the phone. N.T. 1/7/14 at 206.

Following his arrest, defendant gave a statement to police, admitting that he had shot Carr multiple times as she was in the vehicle and that she was still breathing as he drove away. N.T. 1/9/14 at 64-65. Defendant further confessed to conspiring with Ms. Soler and Bernard to dispose of Carr's body and that he did so using the gas that Ms. Soler and Bernard heard purchased. N.T. 1/9/14 at 66-67.

Trial Court Supplemental Opinion, filed March 9, 2015, at pp. 2-4.

## III. DISCUSSION

If court-appointed counsel for a PCRA petitioner determines that the issues the petitioner raises for collateral review are meritless, and the PCRA court concurs, counsel may withdraw and the petitioner may proceed *pro se*, by privately retained counsel, or not at all. *Finley*, 550 A.2d at 218. To be permitted to withdraw, petitioner's counsel must file a no-merit letter, or "*Finley* letter," detailing the nature and extent of counsel's review and listing each issue the petitioner wished to raise, with counsel's explanation as to why the issues are meritless. *Commonwealth v. Pitts*, 981 A.2d 875, 876 n.1 (Pa. 2009) (citing *Finley*, 550 A.2d at 215). After reviewing a *Finley* letter, the PCRA court is required to independently review the record to evaluate the petitioner's claims. *Id.* A PCRA petition may be dismissed without a hearing if the Court determines that there are no claims of arguable merit and no purpose would be served by

6

further proceedings. *Commonwealth v. Lignons*, 971 A.2d 1125, 1143 (Pa. 2009); *see* Pa.R.Crim.P. 907(1).

In his *Finley* Letter, Mr. Rudenstein stated his opinion that defendant's claims had no arguable merit. After an independent review of the record, the Court agrees with Mr. Rudenstein. Each of defendant's PCRA appellate claims is considered below.

Initially, the Court notes that the majority of defendant's claims are premised upon his contention that he received ineffective assistance of counsel. Under Pennsylvania law, counsel is presumed to be effective and the burden to prove otherwise lies with the petitioner. *Commonwealth v. Basemore*, 744 A.2d 717, 728 (Pa. 2000), n.10 (citing *Commonwealth v. Copenhefer*, 719 A.2d 242, 250 (Pa. 1998)). To obtain collateral relief based on the ineffective assistance of counsel, a petitioner must show that counsel's representation fell below accepted standards of advocacy and that as a result thereof, the petitioner was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 694 (1984). In Pennsylvania, the *Strickland* standard is interpreted as requiring proof that: (1) the claim underlying the ineffectiveness claim had arguable merit; (2) counsel's actions lacked any reasonable basis; and (3) the ineffectiveness of counsel caused the petitioner prejudice. *Commonwealth v. Miller*, 987 A.2d 638, 648 (Pa. 2009); *Commonwealth v. Pierce*, 527 A.2d 973, 975 (Pa. 1987). To satisfy the third prong of the test, the petitioner must prove that, but for counsel's error, there is a reasonable probability that the outcome of the proceeding would have been different. *Commonwealth v. Sneed*, 899 A.2d 1067, 1084 (Pa. 2006) (citing *Strickland*, 466 U.S. at 694). If the PCRA court determines that any one of the three prongs cannot be met, then the court need not hold an evidentiary hearing as such a hearing would serve no purpose. *Commonwealth v. Jones*, 942 A.2d 903, 906 (Pa. Super.), *appeal denied*, 956 A.2d 433 (Pa. 2008).

7

*A. Failure to Move to Suppress Defendant's Involuntary Statement*

Defendant first claims that trial counsel was ineffective for "failing to move to suppress Defendant's involuntary statement given to police," when he was high on drugs and subject to a coercive environment. Statement of Matters at ¶ a(1). This claim is without merit.

"[T]he standard for determining whether a statement is voluntary is based on the totality of the circumstances and considers, among other things, whether the defendant was coerced or manipulated or promised something in exchange for his confession; essentially...whether the defendant freely made the decision to give the statement." *Commonwealth v. Ogrod*, 839 A.2d 294, 320 (Pa. 2003); *see also Commonwealth v. Johnson*, 107 A.3d 52, 93 (Pa. 2014) (noting totality of the circumstances also includes defendant's mental and physical condition). "When a defendant alleges that his waiver or confession was involuntary, the question 'is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess.'" *Commonwealth v. Sepulveda*, 55 A.3d 1108, 1137 (Pa. 2012) (quoting *Commonwealth v. Templin*, 795 A.2d 959, 966 (Pa. 2002)).

Here, prior to defendant's trial, counsel filed an omnibus motion seeking to suppress the inculpatory statement defendant made to detectives on April 4, 2012, where he confessed to shooting the victim multiple times during an argument. *See* Omnibus Motion, filed December 10, 2013; N.T. 1/9/14 at 64. However, at trial, counsel informed the Court that the motion was withdrawn. N.T. 1/6/14 at 20-24. At that time, defendant told the Court that he agreed with counsel's decision to withdraw the motion. N.T. 1/6/14 at 23.

The record demonstrates that even if counsel had not withdrawn the motion to suppress defendant's statement, the motion would have been denied, as the statement was voluntarily

8

given. First, Detective Bamberski testified that prior to interviewing defendant, he orally, and again in writing, advised defendant of his *Miranda* rights, including his right to remain silent. N.T. 1/9/14 at 50-56. Furthermore, the record is devoid of any evidence that defendant was abused or mistreated during the interview. Detective Bamberski testified that defendant was brought to Homicide at approximately 7:30 P.M. on April 4, 2012. N.T. 1/9/14 at 83. His formal interview began a few hours later, at 12:38 A.M., and concluded at 3:46 A.M. N.T. 1/9/14 at 75. During that time, defendant was given coffee, water, and a hot meal. N.T. 1/9/14 at 60-61, 77-78. Although during the interview, defendant admitted to snorting cocaine a few hours before, at approximately 5:00 P.M., Detective Bamberski testified that there was no indication that defendant appeared to be intoxicated, inebriated, suffering from withdrawal, or suffering from any other medical issue. N.T. 1/9/14 at 58-59, 75. Rather, defendant appeared to understand everything he was asked and was responsive to those questions. N.T. 1/9/14 at 74-75. Furthermore, during the interview, defendant denied having any trouble understanding what was going on or why he was being interviewed. N.T. 1/9/14 at 59.

Accordingly, the record shows that under the totality of the circumstances, defendant freely made the decision to give his statement to detectives. Therefore, a motion to suppress the statement would have been meritless and properly denied. As a result, trial counsel was not ineffective for withdrawing such a motion.

*B. Agreement to Exclude Detective Dove's Testimony*

Defendant next claims that trial counsel was ineffective for "agreeing to the Commonwealth's request to exclude former Detective Dove as a witness without first consulting with Defendant...." Statement of Matters at ¶ a(2). However, there is nothing in the record suggesting that trial counsel ever agreed to such a request.

9

At trial, the Commonwealth informed the Court that it would not be calling Detective Dove, who was partnered with Detective Bamberski in interviewing defendant and formalizing defendant's statement. N.T. 1/9/14 at 6. In addition, the Commonwealth made an oral motion in limine to exclude any reference to allegations made against Dove, who at the time of defendant's trial, had been accused of misconduct.[3] N.T. 1/9/14 at 5-6. At that time, trial counsel informed the Court that impugning the detective's credibility was not a part of his trial strategy, since he was not challenging the voluntariness of defendant's confession. N.T. 1/9/14 at 6. However, he at no time agreed to exclude Detective Dove as a witness at trial.[4] No relief is due.

### C. Failure to Object to the Commonwealth's Decision to not Call Detective Dove as a Witness

Defendant next alleges that trial counsel was ineffective for "failing to object to the prosecutor's informing the Court that she was not putting Detective Dove on the stand." Statement of Matters at ¶ a(3). Defendant argues that this interfered with his ability to "confront and cross-examine Dove as to the circumstances surrounding his interrogation and giving a statement." Id. This claim is without merit.

As discussed above in Section B, at trial, the Commonwealth informed the Court that it would not be calling Detective Dove as a witness, but would instead introduce defendant's police statement through the other interviewer, Detective Bamberski. Trial counsel could not have been ineffective for not objecting to this decision, as there was no basis to do so. There is no rule of law that permits defense counsel to compel the Commonwealth to call a cumulative witness.

---

[3] As the Court noted when granting the Commonwealth's motion in limine, the allegations made against Detective Dove did not involve the manner in which he conducted interrogations. N.T. 1/9/14 at 7.

[4] To the extent that defendant means to contend that trial counsel erred by not objecting to the Commonwealth's decision not to call Detective Dove as a witness, that claim is addressed in Section C, below.

While defendant claims that the Commonwealth's decision prevented him from confronting Detective Dove as to the circumstances surrounding his interrogation, defendant was free to call Dove as his own witness. Defendant nowhere claims, however, that trial counsel erred by not doing so. This is likely because he realizes that trial counsel had no reason at all to believe that Detective Dove would, in any manner, contradict Detective Bamberski's recitation of the circumstances surrounding defendant's interview and confession, during which both Dove and Bamberski were present. Defendant has never averred any reason to believe that Dove would have said anything helpful to the defense. Moreover, the Court would not have allowed the defense to call Dove solely for the purpose of introducing evidence of Dove's alleged misconduct, which had no connection whatsoever to defendant's case. No relief is due.

*D. Failure to Object to Admission of Crime Scene Photograph*

Defendant next claims that trial counsel was ineffective for not objecting to the admission of "highly-inflammatory crime scene photographs...which led to an outburst in the courtroom and caused the trial judge to warn spectators to be quiet or step out of the courtroom." Statement of Matters at ¶ a(4). This claim is without merit.

> "When considering the admissibility of photographs of a homicide victim, which by their very nature can be unpleasant, disturbing, and even brutal, the trial court must engage in a two-step analysis:
>
> First a [trial] court must determine whether the photograph is inflammatory. If not, it may be admitted if it has relevance and can assist the jury's understanding of the facts. If the photograph is inflammatory, the trial court must decide whether or not the photographs are of such essential evidentiary value that their need clearly outweighs the likelihood of inflaming the minds and passions of the jurors."

*Commonwealth v. Johnson*, 42 A.3d 1017, 1033-34 (Pa. 2012) (*quoting Commonwealth v. Pruitt*, 951 A.2d 307, 319 (Pa. 2008)). A photograph is inflammatory if "the photo is so gruesome it

11

would tend to cloud the jury's objective assessment of the guilt or innocence of the defendant." *Commonwealth v. Funk*, 29 A.3d 28, 33 (Pa. Super. 2011) (*en banc*), *appeal denied*, 40 A.3d 1234 (Pa. 2012). Further, photographic images of a homicide victim are often relevant to prove the criminal intent of a defendant. *Pruitt*, 951 A.2d at 319; *Commonwealth v. Solano*, 906 A.2d 1180, 1191 (Pa. 2006).

Here, while defendant does not specify which "highly-inflammatory crime scene photographs" he is referring to in his Statement of Matters, defendant raised an identical claim in his 907 Response, and therein cited and attached as an exhibit, page 101 of the January 7, 2014 notes of testimony. There, the Commonwealth introduced exhibit C-9, a photograph that depicts the victim's burned body lying on the reclined passenger seat of a vehicle and facing the passenger-side door. *See* Commonwealth Exhibit C-9, see also N.T. 1/7/14 at 101-102.

The photograph at issue was compelling and essential evidence to demonstrate to the jury defendant's criminal intent. There were no witnesses to the murder here at issue, since only defendant and the decedent were in the car. However, the photograph permitted the medical examiner to opine that the decedent was moving around in the car towards the door as she was shot four times. In particular, the medical examiner noted that the gunshots, to the underside of decedent's chin, to the left upper back, to the right lower back, and to the right hip, were of differing trajectories. That fact, combined with the decedent's final position, as shown in Exhibit C-9, of being reclined and turned toward the passenger-side door, proved that she was moving toward the door as the shooter fired four separate times. N.T. 1/7/14 at 129-137. This allowed the prosecutor to properly argue, as an inference from the evidence, that defendant shot the decedent in the face and then methodically shot her three more times as she futilely attempted to escape the car. N.T. 1/10/14 at 90-93. Accordingly, the photograph provided extremely

12

probative evidence of defendant's intent to kill that clearly outweighed any likelihood of inflaming the minds and passions of the jurors. Accordingly, it was admissible in evidence even assuming, *arguendo*, that it was gruesome. *See Johnson*, 42 A.3d at 1033-1034.

In addition, any potential for unfair prejudice was ameliorated by the Court's jury charge, which advised the jury of the proper use of the photograph, and admonished the jury not to consider it for any improper purpose:

> During the trial, ladies and gentlemen, you folks saw photographs in this case of the crime scene that showed the body of the decedent in this case. I admitted these photographs into evidence in order to show the location of the decedent at the crime scene to you. These clearly were not pleasant photographs to look at and you folks should not let them stir up your emotions to the prejudice of either defendant. Your verdict must be based upon a rational and fair consideration of all the evidence and not on passion or prejudice against the defendant, against the Commonwealth, or against anybody else connected with this case.

N.T. 1/10/14 at 132. Because the challenged photograph was admissible, and the Court gave an appropriate limiting instruction, trial counsel could not have been ineffective for failing to object to its admission. No relief is due.

*E. Failure to Object to In-Court Demonstration of Victim's Injuries*

Defendant next claims that trial counsel "failed to object when the prosecuting attorney used herself as a human prop permitting the doctor who was testifying to show where the injuries were on the victim who was also a female." Statement of Matters at ¶ a(5). This claim is without merit.

Demonstrative evidence is offered "for the purpose of rendering other evidence more comprehensible to the trier of fact." *Commonwealth v. Serge*, 896 A.2d 1170, 1177 (Pa. 2006). When determining whether to admit such evidence in a homicide case, "the trial court must first determine if the evidence is inflammatory." *Commonwealth v. Hollihan*, 566 A.2d 254, 259 (Pa. Super. 1989). If the evidence is inflammatory, "the trial court must then determine if the

13

evidence is of such essential evidentiary value that its need clearly outweighs the likelihood of inflaming the passions of the jurors." *Id.*

Here, during the medical examiner's testimony, the assistant district attorney requested that the examiner step down from the witness stand and point to the assistant district attorney's body to show the jury the various locations of the victim's gunshot wounds and the trajectory of the bullets that struck her. N.T. 1/7/14 at 134. This demonstration was clearly not inflammatory, as the examiner simply pointed to the various locations. Moreover, the demonstration was an extremely helpful aid for the jury to understand the direction of the injuries, as the differing directions indicated the victim's movement during the shooting. N.T. 1/7/14 at 136-137. Because the demonstration was highly relevant and entirely proper, trial counsel could not have been ineffective for failing to object. No relief is due.

*F.   Failure to object to admission of co-defendant, Jacqueline Soler's police statement*

Defendant next claims that trial counsel was ineffective for failing to object to "the use of co-defendant Jacqueline Soler's, statement where Defendant was prevented from confronting and cross-examining the witness..." Statement of Matters at ¶ a(6). Defendant alleges that this resulted in a *Bruton* violation. *Id.* This claim is without merit.

Under *Bruton v. United States*, 391 U.S. 123 (1968), the confession of a co-defendant that incriminates another defendant at a joint trial may not be admitted as evidence unless the co-defendant who made the statement takes the stand and is subject to cross-examination. Otherwise, the Sixth Amendment right to confrontation of the defendant who did not make the statement would be violated. However, the Confrontation Clause is satisfied if the confession is redacted in such a manner as to remove facially incriminating references to the other defendant and the jury is given an appropriate instruction to only consider the statement as evidence against

14

the defendant who made it. *Commonwealth v. Daniels*, 104 A.3d 267, 294 (Pa. 2014). Contextual implication will not violate a defendant's rights. So long as neutral pronouns such as "the other guy" or "him" are substituted for the name of the other defendant, and the jury is given an appropriate limiting instruction, *Bruton* is satisfied. *Id.*

Here, the Commonwealth introduced the statement of co-defendant Jacqueline Soler, which had been edited in accordance with *Bruton*. N.T. 1/9/14 at 171-184. In addition, the Court instructed the jury that they could only consider Jacqueline Soler's statement against Jacqueline Soler, and that the statement was not evidence against defendant. N.T. 1/10/14 at 128-129. Accordingly, defendant's Sixth Amendment rights were fully protected. Therefore, trial counsel had no basis for objecting to the admission of the edited statement. As a result, he could not have been ineffective for failing to do so.

### G. Failure to Request Involuntary Manslaughter Instruction

Defendant next claims that trial counsel was ineffective for failing to "request and/or object to the trial court's refusal to instruct the jury on the lesser-included offense of involuntary manslaughter." Statement of Matters at ¶ a(7). This claim is without merit.

"[A] trial court shall only instruct on an offense where the offense has been made an issue in the case and where the trial evidence reasonably would support such a verdict ... Instructions regarding matters which are not before the court or which are not supported by the evidence serve no purpose other than to confuse the jury." *Commonwealth v. Patton*, 936 A.2d 1170, 1176 (Pa. Super. 2007), *aff'd*, 985 A.2d 1283 (Pa. 2009). Accordingly, an involuntary manslaughter instruction is warranted when the evidence adduced at trial supports that the defendant caused the death of another person as a direct result of his or her acting in a reckless or grossly negligent manner. *See* 18 Pa.C.S. § 2504.

15

Here, the evidence presented at trial did not support a verdict of involuntary manslaughter. Defendant confessed to detectives that on the night of the murder, he was arguing with the victim, when he "snapped" and proceeded to shoot her multiple times, while she tried to escape. N.T. 1/9/14 at 62-64. As discussed above, the confession was fully supported by the physical evidence in the case, including the decedent's injuries as documented by the medical examiner and the crime scene photographs. Such facts are completely inconsistent with involuntary manslaughter. Accordingly, trial counsel had no basis to request such an instruction. As a result, he could not have been ineffective for failing to do so.

### H. Failure to Move for a Mistrial

Defendant next claims that trial counsel was ineffective for failing to request a mistrial when the jury informed the Court that they were deadlocked on the charge of first degree murder. Statement of Matters at ¶ a(8). This claim is without merit.

> The duration of jury deliberations is a matter within the sound discretion of the trial court, whose decision will not be disturbed unless there is a showing that the court abused its discretion or that the jury's verdict was the product of coercion or fatigue. Relevant factors in this assessment include the charges at issue, the complexity of the issues, the amount of testimony to consider, the length of the trial, the solemnity of the proceedings, and indications from the jury on the possibility of reaching a verdict.

*Commonwealth v. Moore*, 937 A.2d 1062, 1077 (Pa. 2007), *cert. denied*, 519 U.S. 827 (1996). Where the issues are complex and deliberations have been relatively brief, the Court does not abuse its discretion in ordering further deliberations. *Id.* Further, where the jury indicates its inability to reach a verdict, the Court may require that the jury retire for further deliberations. *Commonwealth v. Spencer*, 275 A.2d 299, 304-305, 305 n.7 (Pa. 1971). Finally, the Rules of Criminal Procedure explicitly authorize the Court to take a partial verdict when the jury fails to agree on a particular charge. *See* Pa.R.Crim.P. 648(D).

16

In this case, following a four-day jury trial where seventeen witnesses testified, the jury deliberated for approximately eleven hours before indicating that while it reached a verdict on all other charges, it was unable to "come to a unanimous decision that the defendant Daniel Soler [was] guilty of first-degree murder." N.T. 1/10/14 at 173-205; 1/13/14 at 40; 1/14/14 at 8-9. At that time, the Court properly gave a standard *Spencer* charge to the jury, instructing it to continue to deliberate in an effort to reach a verdict. N.T. 1/14/14 at 9-13.[5] Approximately three hours later, the jury indicated that it still had not reached a unanimous verdict. N.T. 1/14/14 at 17. Therefore, the Court instructed the jury that it could move beyond the first degree murder charge and consider the remaining charges in the case with a view toward reaching a partial verdict. N.T. 1/14/14 at 23-25.[6] A short time later, the jury inquired whether first degree murder was still an option. The Court responded that while the jury was not prohibited from reaching a verdict on first degree murder, if it could not do so, it should determine whether defendant was guilty or not guilty of third degree murder. N.T. 1/14/14 at 29-30.

Approximately one hour later, the jury informed the Court that it was still unable to reach a verdict on first degree murder, and that some jurors were unwilling to consider third degree murder. N.T. 1/14/14 at 32. It was clear from that communication that some jurors who believed that defendant had the specific intent to kill, were unwilling to consider third degree murder since the Court had defined it as "a killing with malice where there is no specific intent to kill." N.T. 1/10/14 at 148. That instruction was derived from the standard jury instructions,

---

[5] A *Spencer* charge is a standard instruction given to a deadlocked jury that was recommended by the American Bar Association and approved by our Supreme Court in *Spencer, supra. See, e.g., Commonwealth v. P.L.S.,* 894 A.2d 120, 125-126 (Pa. Super.), *appeal denied,* 906 A.2d 542 (Pa. 2006).

[6] It was necessary to instruct the jury that it had permission to move beyond first degree murder, because the Court had given the jury a standard "homicide progression charge," which directs the jury to decide the most serious form of homicide before moving on to any lesser charges. Such an instruction is proper. *See Commonwealth v. Washington,* 927 A.2d 586, 611 (Pa. 2007).

17

which define third degree murder as "any killing with malice that is not first or second degree murder." Pa.SSJI § 15.2502C (Crim.). This widely used standard instruction, read literally, is incorrect, since a defendant can be guilty of third degree murder whether or not he or she has the specific intent to kill. As our Supreme Court has stated:

> [A]bsence of specific intent to kill is not an element of third degree murder; rather, such crime is an intentional act, characterized by malice, that results in death, intended or not.... True, the intent to kill is a defined element of first degree murder—this does not mean an element of third degree murder is the polar opposite of intent to kill, such that the Commonwealth must prove a lack of intent to kill to convict of third degree murder. The Commonwealth has no such obligation; evidence of intent to kill is simply irrelevant to third degree murder. The elements of third degree murder absolutely include an intentional *act,* but not an act defined by the statute as intentional murder. The act sufficient for third degree is still a purposeful one, committed with malice, which results in death....

*Commmonweatlh v. Fisher,* 80 A.3d 1186, 1191 (Pa. 2013). Accordingly, the Court clarified for the jury that absence of specific intent to kill was not an element of third degree murder, and that jurors who believed that defendant had the specific intent to kill were not precluded from considering the third degree murder charge. N.T. 1/14/14 at 39-41. Because this instruction accurately set forth the law, trial counsel had no basis to object to it, or to request a mistrial.

Moreover, trial counsel had no strategic reason for requesting a mistrial, even if the law had given him a basis to do so. Counsel's goal was to avoid a conviction for first degree murder, given the overwhelming evidence that defendant shot and killed the defenseless decedent. Counsel attempted to convince the jury that due to defendant's intoxication from drugs and alcohol, he could not formulate an intent to kill and was only guilty of third degree murder. N.T. 1/10/14 at 25-30. Therefore, a conviction for third degree murder was a victory for the defense, and certainly preferable to retrying the case for first degree murder following a mistrial.

18

Accordingly, trial counsel could not have been ineffective for failing to request a mistrial after the jury reported it could not reach a verdict on first degree murder. No relief is due.

*I. After-Discovered Evidence*

Defendant next claims that the PCRA Court "erred by failing to credit the newly-discovered evidence submitted and filed by the Defendant concerning corrupt Homicide Detective, Ronald Dove, after Dove pled guilty to all charges filed against him, including tampering with/fabricating physical evidence on April 26, 2017." Statement of Matters at ¶ b. This claim is without merit.

To obtain relief under the PCRA based on after-discovered evidence, defendant must plead and prove that the evidence: 1) could not have been obtained prior to the conclusion of the trial by the exercise of reasonable diligence; 2) is not merely cumulative; 3) will not be used solely to impeach the credibility of a witness; and 4) would likely compel a different verdict. 42 Pa.C.S. § 9543(a)(2)(vi); *Commonwealth v. D'Amato*, 856 A.2d 806, 823 (Pa. 2004). Defendant's proffered after-discovered evidence fails to entitle him to relief for several reasons.

First, while it is true that on April 26, 2017, Detective Dove pled guilty to one count each of flight to avoid apprehension, trial, or punishment (18 Pa.C.S. § 5126(a)), conspiracy (18 Pa.C.S. § 903), hindering apprehension or prosecution (18 Pa.C.S. § 5105(a)(1)), obstructing governmental operations (18 Pa.C.S. § 5101), unsworn falsification to authorities (18 Pa.C.S. § 4904(a)(1)), and tampering with or fabricating physical evidence (18 Pa.C.S. 4910(1)), these convictions of unrelated criminal conduct would have no probative value apart from impeaching Dove's credibility. As outlined under the four-part test set forth above, "[a] defendant seeking a new trial must demonstrate he will not use the alleged after-discovered evidence 'solely to

19

impeach a witness's credibility.'" Commonwealth v. *Griffin*, 137 A.3d 605, 610 (Pa. Super. 2016) (quoting *Commonwealth v. Castro*, 93 A.3d 818, 821 n.7 (Pa. 2014)).

Moreover, Dove was never called as a witness in the case: his involvement was taking defendant's confession, and his testimony would have been completely duplicative of Detective Bamberski, who was also present during defendant's statement. Accordingly, Dove's convictions would not be admissible in evidence even if defendant's case were retried. No relief is due.

### J. PCRA Counsel's Ineffectiveness

Finally, defendant claims that the PCRA Court erred "by failing to credit the defendant's claims of PCRA counsel ineffectiveness..." Statement of Matters at ¶ c. Specifically, defendant complains that PCRA counsel failed to communicate effectively with defendant and failed to raise claims of arguable merit in an amended petition. However, for the reasons set forth above, defendant has identified no claims of arguable merit, and PCRA counsel was correct to refuse to raise defendant's meritless claims in an amended petition. No relief is due.

## IV. CONCLUSION

For all of the foregoing reasons, the Court's order dismissing defendant's PCRA petition should be affirmed.

BY THE COURT:

GLENN B. BRONSON, J.

20